Robert Tauler (SBN 241964)
Tauler Smith LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
Telephone: (310)746-5601
rtauler@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> BLACKSTONE LABS, a Florida Limited Liability Company; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO.    2:15-CV-1670 <br><br> **COMPLAINT FOR VIOLATIONS OF SECTION 42 (a)(1)(B) OF THE THE LANHAM ACT** <br><br> **[DEMAND FOR A JURY TRIAL]** |

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff"), by and through its undersigned attorneys, submits this Complaint against Blackstone Labs, LLC ("Blackstone" or "Defendant"), and in support thereof, avers as follows:

## INTRODUCTION

1.     This is a civil action arising from Defendants' false advertising and blatant misrepresentations regarding its Super DMZ 2.0 nutritional supplement and Angel Dust pre-workout which are marketed as being natural supplements, when, in fact, they contain illegal synthetic ingredients.

2.     Defendants' false, misleading, illegal and deceptive practices have violated the Lanham Act and have unjustly enriched Defendants at the expense of ND, and have caused ND extensive and irreparable harm, including, but not limited to, loss of revenue, disparagement, and loss of goodwill.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

4.     This Court has personal jurisdiction over Defendant because defendant has, directly or through its intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised its nutritional supplement products in the United States, the State of California, and this district, including the products Super DMZ 2.0 and Angel Dust. Defendants have purposefully and voluntarily placed Super DMZ 2.0 and Angel Dust into the stream of commerce with the expectation that they will be purchased in this district.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim

**COMPLAINT**

occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

6.    Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff") an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

7.    Defendant Blackstone Labs, LLC ("Defendant") is a Florida Limited Liability Company which lists 9605 Parkview Ave. Boca Raton, FL 33428 as its business address.

8.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1- 10, inclusive, and therefore sued these defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

9.    The nutritional supplement industry is one of the fastest growing and most lucrative in the United States.  A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years.  The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act.

### Plaintiff Nutrition Distribution & Mass FX Black

10.    Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for body building.

11.    Plaintiff has products in several categories of body building products, including pre-workouts, muscle-gainers, and fat burners.

12.    Around 2011, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

13.    After devoting its resources for over a year on product development and testing, Plaintiff introduced "Mass FX Black" in April 2013.

### Defendants & Super DMZ 2.0

14.    Defendant is a competing nutritional supplement company incorporated in Florida.

15.    On information and belief, Defendant launched Super DMZ 2.0 in early 2014.  Super DMZ 2.0 has two main ingredients:  Dymethazine & Methylsten.  Super DMZ 2.0 combines 10 mg of methylstenbolone and 10 mg of dymethazine into a capsule to be taken orally.  These synthetic compounds were advertised as "comparable to popular supplements such as Dianabol and Anadrol [illegal steroids], the only difference is it's 100% legal!"   In fact, neither Dymethazine nor Methylsten have ever been legal.

### Illegal Ingredients in Super DMZ 2.0 Exposed

16.    On April 22, 2014, the Journal of Investigative Medicine published a research article documenting the severe health risks of Super DMZ 2.0.  The article concluded:  "Supplements like Super DMZ Rx 2.0 are relatively inexpensive, widely available online and over-the-counter, and unregulated. This is problematic because consumers are at risk of severe liver injury due to AAS, even when taken at manufacturer-recommended dosages."

17.    Defendant has falsely labeled and marketed Super DMZ 2.0 since its inception in a multitude of ways.  Defendants have falsely labeled their steroid as a "nutritional supplement," giving users the massive gains of an illegal steroid and a false sense of security.  In reality, Defendants knew all along that their product was a synthetic analog of substances previously banned by Congress.

18.     Users of Super DMZ 2.0 have little incentive to use a natural product like MassFX until they are hurt or the product becomes illegal.  Indeed, on December 13, 2014 President Obama signed into the "Designer Anabolic Steroid Control Act of 2014," which explicitly banned analogs of substances previously banned, including Super DMZ 2.0.

19.     Despite the illegality of their product, Defendants still sell it on their website.  (See, Exhibit A).

**Plaintiff's Pre-Workout "Super Size"**

20.     Plaintiff also has a product in the pre-workout genre of nutritional supplements called Supersize, which directly competes with Defendants.  Due to the illegal ingredients in Angel Dust, however, Supersize has struggled for market share.

**Defendant's Pre-Workout "Angel Dust"**

21.     On information and belief, Defendant launched a pre workout called Angel Dust in 2013.  On or around March 2014, Defendants introduced the "new Angel Dust," which was advertised as containing a new "kick-ass" ingredient called "AMP Citrate." The new Angel Dust was touted as "the strongest preworkout on the market."  Defendant falsely claimed on Angel Dust labels that AMP Citrate is "extracted from the aroma of Poucheng tea," when in reality it is a synthetic ingredient with a virtually identical structure to DMAA, a product banned by the FDA in 2013.

22.     Around September 21, 2014, an independent study was published by Harvard researcher Peter Cohen (the "Harvard Study") confirming that so-called AMP Citrate is not derived from the aroma of Poucheng tea at all, but, indeed a synthetic compound created in a laboratory that is virtually identical to the banned DMAA.  The Harvard Study dubs the new compound "DMBA," due to the chemical similarities with DMAA.

23.     Defendant has falsely labeled and marketed the new Angel Dust since its inception in a multitude of ways.  Defendant falsely markets Angel Dust as having the "kick ass" ingredient AMP Citrate that is derived from tea aroma, when in fact AMP

Citrate is a synthetic analog of the illegal substance DMAA that has never even been tested on humans.  Defendant's lie made them millions while Plaintiff's unadulterated product struggled to gain market share.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

24.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

25.    Defendant has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its "nutritional supplement" Super DMZ 2.0, namely, that it is a legal nutritional supplement, instead of truthfully stating that it is an illegal synthetic steroid.

26.    The use of such unlabeled and falsely labeled substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

27.    The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerns about the consequences of taking steroids or illegal substances.

28.    Defendant has introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

29.    Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendant and the loss of goodwill in Plaintiff's products.  Indeed, Defendant's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

30.    Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial

advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

## SECOND CLAIM FOR RELIEF

### (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)

31.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

32.    Defendant has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its Angel Dust, including that its "kick-ass ingredient" is derived naturally from a tea aroma, instead of truthfully stating that it is a synthetic compound untested on humans.

33.    The use of such unlabeled and falsely labeled substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

34.    The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerns about the health implications of taking synthetic compounds in large doses that have not been tested on humans.

35.    Defendant has introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

36.    Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendant and the loss of goodwill in Plaintiff's products.  Indeed, Defendant's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

37.    Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

**COMPLAINT**

## **PRAYER**

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendant as follows:

1.     For preliminary and permanent injunctive relief enjoining Defendants from producing, licensing, marketing, or selling Super DMZ 2.0 or Angel Dust;

2.     For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;

3.     For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;

4.     For restitution of Defendant's ill-gotten gains;

5.     For treble damages in accordance with 15 U.S.C. § 1117;

6.     For punitive damages;

7.     For costs and attorneys' fees; and

8.     Any other relief the Court may deem appropriate.


DATED:  March 6, 2015        TAULER SMITH LLP



By: ___/s/ Robert Tauler _____
    Robert Tauler
    NUTRITION DISTRIBUTION LLC

1
2
3
## **DEMAND FOR JURY TRIAL**
4
5
    Plaintiff hereby demands a trial by jury.
6
7
DATED:  March 6, 2015                 TAULER SMITH LLP
8
9
10
11                     By: ___/s/ Robert  Tauler _____
12                     Robert Tauler
                     NUTRITION DISTRIBUTION LLC
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**