VENABLE LLP
Daniel S. Silverman (SBN 137864)
Kimberly Culp (SBN 238839)
Email: dsilverman@venable.com
kculp@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Attorneys for Defendant
BLACKSTONE LABS, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,

Plaintiff,

v.

BLACKSTONE LABS, LLC, a Florida Limited Liability Company; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:15-cv-1670-TJH (ASx)

Hon. Terry J. Hatter Jr.
Courtroom 17 (Spring Street)

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing Date: June 15, 2015
Time: UNDER SUBMISSION

Action Filed: March 6, 2015
Trial Date: None set

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**NOTICE OF MOTION**

TO THIS HONORABLE COURT, PLAINTIFF AND ITS ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on June 15, 2015, or as soon thereafter as counsel may be heard in Courtroom 17 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendant Blackstone Labs, LLC ("Defendant" or "Blackstone") will and does hereby move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief may be granted.

Good cause exists to grant this motion, as follows:

(1) Plaintiff's First Claim for Relief (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act) fails to state a claim upon which relief may be granted; and

(2) Plaintiff's Second Claim for Relief (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act) fails to state a claim upon which relief may be granted.

This motion is based on the instant notice, the accompanying Memorandum of Points and Authorities, and Request for Judicial Notice, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which occurred telephonically on April 28, 2015 and was subsequently followed by e-mail correspondence between counsel.

/ / /

/ / /

Dated: May 8, 2015

**VENABLE LLP**

By: /s/ Daniel S. Silverman
Daniel S. Silverman
Kimberly Culp
Attorneys for Defendant
BLACKSTONE LABS, LLC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................2

I. PLAINTIFF'S FIRST CLAIM FOR RELIEF ....................2

II. PLAINTIFF'S SECOND CLAIM FOR RELIEF ....................3

ARGUMENT ....................3

I. LEGAL STANDARD ....................3

II. THE SECOND CLAIM SHOULD BE DISMISSED WITH PREJUDICE BECAUSE DEFENDANT'S ANGEL DUST LABEL DOES NOT CONTAIN THE ALLEGED FALSE ADVERTISING ....................4

III. BECAUSE PLAINTIFF HAS NOT ALLEGED (AND CANNOT ALLEGE) A FALSE OR MISLEADING STATEMENT OF FACT ABOUT SUPER DMZ 2.0 OR ANGEL DUST, THE COURT SHOULD DISMISS THE FIRST AND SECOND CLAIMS WITH PREJUDICE ....................5

IV. UNDER THE PRIMARY JURISDICTION DOCTRINE THE COURT SHOULD DEFER TO THE FDA'S JURISDICTION ON THE PRODUCTS AT ISSUE AND DISMISS BOTH OF PLAINTIFF'S CLAIMS ....................6

A. Federal Regulation of Food and Drugs Generally ....................7

B. The Court Should Dismiss the First and Second Claims ....................9

CONCLUSION ....................13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ascon Properties, Inc. v. Mobil Oil Co.*
866 F.2d 1149 (9th Cir. 1989) .... 4

*Ashcroft v. Iqbal*
129 S.Ct. 1937 (2009) .... 4

*Astiana v. Hain Celestial Group, Inc.*
__ F.3d __, 2015 WL 1600205 (9th Cir. 2015) .... 7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .... 4

*Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*
1997 WL 94237 (D. Kan., Feb. 26, 1997) .... 10

*Clark v. Time Warner Cable*
523 F.3d 1110 (9th Cir. 2008) .... 7

*Dietary Supplemental Coalition, Inc. v. Sullivan*
978 F.2d 560 (9th Cir. 1992) .... 9

*DuBois v. Ford Motor Co.*
276 F.3d 1019 (8th Cir. 2002) .... 3

*Holistic Candlers and Consumers Assoc. v. FDA*
664 F.3d 940 (D.C. Cir. 2012) .... 9

*In Re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*
758 F.Supp.2d 1077 (S.D. Cal. 2010) .... 5

*JHP Pharmaceuticals, LLC v. Hospira, Inc.*
52 F.Supp. 3d 992 (C.D. Cal. Oct. 7, 2014) .... 10, 11

*Odom v. Microsoft Corp.*
486 F.3d 541 (9th Cir. 2007) .... 3

*PhotoMedex, Inc. v. Irwin*
601 F.3d 919 (9th Cir. 2010) .... 9, 11, 12

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530 (9th Cir. 1984) .... 3

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*
933 F.Supp. 918 (C.D. Cal. 1996) .... 9, 12

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007) .... 5

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*
307 F.3d 775 (9th Cir. 2002)........................................................ 7

*U.S. v. General Dynamics Corp.*
828 F.2d 1356 (9th Cir. 1987)........................................................ 11

*Western Mining Council v. Watt*
643 F.2d 618 (9th Cir. 1981)........................................................ 4

**STATUTES**

21 C.F.R. § 10.115(b)(3) ........................................................ 9

21 C.F.R. § 10.30........................................................ 8

21 C.F.R. § 101.36........................................................ 8

21 U.S.C. § 321(ff) ........................................................ 8, 10

21 U.S.C. § 337(a) ........................................................ 7

21 U.S.C. § 343(s) ........................................................ 8

21 U.S.C. § 802(41)(A)(i)-(xlx) ........................................................ 6

21 U.S.C. §§ 332-334 ........................................................ 8

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff Nutrition Distribution, LLC d/b/a Athletic Xtreme ("ND" or "Plaintiff") hypocritically complains, albeit incorrectly, that Defendant Blackstone Labs, LLC ("Blackstone" or "Defendant") sells two "illegal" products, as Plaintiff has previously been judged guilty in a criminal case for selling illegal products, following charges brought by the Federal Government.[1] As Plaintiff well knows from that experience, it is the Government, not private plaintiffs, who enforce the Food, Drug and Cosmetic Act ("FDCA"). And it is the Food and Drug Administration ("FDA"), not private plaintiffs, who determine what is, and is not, an illegal product.

Plaintiff's claims should be dismissed because they fail to allege any false or misleading statement of fact. And, assuming *arguendo* that they do plead such facts, they intrude on the exclusive domain of the FDA and its duty to determine what are legal and "illegal" dietary supplements.

First, with regard to Angel Dust, Plaintiff alleges that it is falsely advertised as "derived naturally from a tea aroma." Plaintiff alleges that Defendant made this allegedly false claim "on Angel Dust labels." This claim can be disposed of quickly because it is patently false, as nowhere on Defendant's Angel Dust labels is that factual claim made.

Second, Plaintiff claims that two of Defendant's products – Super DMZ 2.0 and Angel Dust – contain "illegal" ingredients and are, therefore, falsely advertised as nutritional supplements. However, none of the ingredients listed on the Super

[1] In October 2011, the United States of America separately charged two companies, Nutrition Distribution, Inc. and Anabolic Resources (the predecessors of ND) owned by ND's owner, Kevin Smith, with the intent to defraud and mislead by introduction into interstate commerce three unapproved drugs "Anabolic Xtreme Hyperdrol," "Anabolic Xtreme Slim Xtreme," and "Anabolic Resources Superdrol." In November 2011, ND's predecessors plead guilty to the charges. They were sentenced and had to forfeit $100,000 (for one), were fined $500,000 (the other), and each agreed to monitoring and testing by the FDA of all products distributed by them and their successor companies for a period of 5 years.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

DMZ 2.0 and Angel Dust labels have been declared "illegal" by Congress or the FDA.

Finally, the regulatory issue of whether Super DMZ 2.0 and Angel Dust are "illegal" dietary supplements is improperly presented to this Court in the context of this private false advertising litigation. The determination of this issue is in fact squarely within the exclusive province of the FDA itself — as the relevant agency charged with enforcing the complex and comprehensive regulatory scheme governing the labeling and marketing of "dietary supplement" products.

In short, this case calls for factual and legal determinations that should be resolved first by the responsible agency, the FDA, guided by its own technical expertise and policy objectives. The Court should thus defer to the "primary jurisdiction" of the FDA, as the agency charged with interpreting and applying federal regulations regarding dietary supplement labeling and marketing.

Because neither the First nor the Second claim states facts upon which relief may be granted, the Court should dismiss Plaintiff's Complaint.

## STATEMENT OF FACTS[2]

Plaintiff is a supplement manufacturer and marketer. Complaint, Docket Entry #1, at ¶ 10.

Defendant is also a nutritional supplement company. *Id.* ¶ 14.

## I. PLAINTIFF'S FIRST CLAIM FOR RELIEF

One of Defendant's products is Super DMZ 2.0, which has two main ingredients: Dymethazine & Methylsten. *Id.* ¶ 15. Defendant advertised Super DMZ 2.0 as "100% legal." *Id.* Plaintiff erroneously contends that neither Dymethazine nor Methylsten are "legal." *Id.*

Plaintiff alleges that Dymethazine & Methylsten are "synthetic analog[s] of

---

[2] For purposes of this motion only, Defendant assumes all facts alleged in the Complaint to be true, unless the Court is permitted to take judicial notice of contradictory facts.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

substances previously banned by Congress." *Id.* ¶ 17. Plaintiff does not allege that Congress (or the FDA) has banned either Dymethazine or Methylsten.[3]

Defendant has further advertised Super DMZ 2.0 as a "nutritional supplement." *Id.*

## II. PLAINTIFF'S SECOND CLAIM FOR RELIEF

Another of Defendant's products is Angel Dust. *Id.* ¶ 21. Angel Dust contains the ingredient AMP Citrate. *Id.* Plaintiff alleges that AMP Citrate is the "synthetic analog of the illegal substance DMAA." *Id.* ¶ 23. Plaintiff does not allege that AMP Citrate has been banned by either Congress or the FDA.

Plaintiff also, incorrectly, alleges that "Defendant falsely claimed on Angel Dust labels that AMP Citrate is 'extracted from the aroma of Poucheng tea,' when in reality it is a synthetic ingredient with a virtually identical structure to DMAA, a product banned by the FDA in 2013." *Id.* ¶ 21. The truth is Defendant does not make the purported advertisement on its Angel Dust label. *See* Defendant's Request for Judicial Notice, filed herewith, at Exhibit 1.

# ARGUMENT

## I. LEGAL STANDARD

A complaint must be dismissed as a matter of law when it (1) "lack[s] a cognizable legal theory" or (2) states "insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533 (9th Cir. 1984).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), "[a]llegations in the complaint, together with reasonable inferences therefrom, are assumed to be true." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007). The court may not, however, accept as true unreasonable inferences or conclusory legal

[3] Although the facts alleged in the complaint are accepted as true, the Court is "not required to read in missing facts necessary to perfect" Plaintiff's claims. *DuBois v. Ford Motor Co.*, 276 F.3d 1019, 1024 (8th Cir. 2002). Defendant highlights the deficiencies in Plaintiff's factual allegations as missing facts that could not be alleged (because they are not true).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

allegations cast in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 1964-65 (2007).

At minimum, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation and quotation omitted). Where a complaint only pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation and quotations omitted). Pleadings that are "no more than conclusions" are "not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950.

Upon dismissal of a complaint pursuant to Rule 12(b)(6), leave to amend need not be granted where the amendment "would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

In this case, leave to amend would be futile. As such, the Complaint should be dismissed with prejudice.

## II. THE SECOND CLAIM SHOULD BE DISMISSED WITH PREJUDICE BECAUSE DEFENDANT'S ANGEL DUST LABEL DOES NOT CONTAIN THE ALLEGED FALSE ADVERTISING

Plaintiff challenges Angel Dust "which was advertised as containing a new 'kick-ass' ingredient called 'AMP Citrate.'" Compl. ¶ 20. Plaintiff does not dispute that Angel Dust includes AMP Citrate. Instead, Plaintiff alleges, incorrectly, that Defendant "claimed on Angel Dust labels that AMP Citrate is 'extracted from the aroma of Poucheng tea,' when in reality it is a synthetic

ingredient with a virtually identical structure to DMAA. . . ." *Id.* ¶ 21. The factual question then posed by Plaintiff's allegation is whether Defendant has claimed "on Angel Dust labels" that AMP Citrate is "extracted from the aroma of Poucheng tea."

Because Plaintiff has referred to the label in its complaint, the Court may take judicial notice of the Angel Dust label. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (the incorporation by reference doctrine permits a court to "consider a writing referenced in the complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned"). Nowhere on Defendant's Angel Dust label does Defendant refer to tea, tea aroma, Poucheng tea, or the derivation of AMP Citrate, let alone make the actual statement that Plaintiff alleges was made. *See* Defendant's Request for Judicial Notice, filed herewith, Exhibit 1. Therefore, the Court should dismiss Plaintiff's Second Claim for relief.

## III. BECAUSE PLAINTIFF HAS NOT ALLEGED (AND CANNOT ALLEGE) A FALSE OR MISLEADING STATEMENT OF FACT ABOUT SUPER DMZ 2.0 OR ANGEL DUST, THE COURT SHOULD DISMISS THE FIRST AND SECOND CLAIMS WITH PREJUDICE

Plaintiff claims that Defendant has falsely labeled its products, Super DMZ 2.0 and Angel Dust. Compl. ¶¶ 17, 23.[4] Plaintiff has alleged Defendant made false or misleading statements of fact about Super DMZ 2.0 "that it is a legal nutritional supplement." *Id.* ¶ 25. Likewise, Plaintiff has alleged that Angel Dust "is a synthetic analog of the illegal substance DMAA." *Id.* ¶ 23. Plaintiff is, apparently, challenging the label of the products as nutritional supplements,

[4] Plaintiff also alleges that Defendant falsely "marketed" these products in a "multitude of ways", which does not even satisfy the minimal pleading standards of Federal Rule of Civil Procedure 8(a). *See In Re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F.Supp.2d 1077, 1093 (S.D. Cal. 2010) (plaintiff failed to identify specific advertisements alleged to be false advertising, when and where they were shown, and why there untrue or misleading and therefore failed to meet Rule 8 pleading standard).



VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

claiming instead that they are illegal products by virtue of their ingredients.

However, the challenged ingredients in these products – Dymethazine, Methylsten, and AMP Citrate – are not listed as "illegal" substances by Congress or the FDA. Plaintiff, for example, directs the Court to the Designer Anabolic Steroid Control Act of 2014 (*id.* ¶ 18), which does indeed provide an extensive list of ingredients that are defined as "anabolic steroids." 21 U.S.C. § 802(41)(A)(i)-(xlx). Significantly, Dymethazine, Methylsten, and AMP Citrate are not on that list. *Id.* Nor is there any other statute or regulation that lists these ingredients as illegal ingredients in a nutritional supplement. As such, the ingredients are not illegal, and thus the labels listing the products as nutritional supplements, are not false or misleading as a matter of law.

Although not plead in the Complaint, in opposition to this motion Plaintiff may cite to actions taken by the FDA in the form of a letter and recall to Defendant. First, these facts are not plead in the Complaint. Second, even if they were, the result on this motion would be the same – the Court should dismiss the first and second claims because, as discussed below, such actions are not determinative of the FDA's position on Defendant's products.

In sum, Plaintiff has alleged that Defendant's products are illegal. Yet, there is no statute or regulation that makes either product "illegal."

## IV. UNDER THE PRIMARY JURISDICTION DOCTRINE THE COURT SHOULD DEFER TO THE FDA'S JURISDICTION ON THE PRODUCTS AT ISSUE AND DISMISS BOTH OF PLAINTIFF'S CLAIMS

Whether or not the ingredients in Super DMZ 2.0 and Angel Dust are "illegal" is a question for the FDA, in the absence of any clear directive from Congress. As discussed above, Congress has acted and has not determined that the ingredients in Defendant's products are illegal. Whether the FDA would determine Defendant's products to be legal nutritional supplements is a question

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

within the primary jurisdiction of the FDA, not this Court in the first instance because it requires an evaluation of the products, the labels, and application of a complex regulatory scheme.

In evaluating primary jurisdiction, the court considers "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Astiana v. Hain Celestial Group, Inc.*, __ F.3d __, 2015 WL 1600205, at *5 (9th Cir. 2015) *quoting Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). "Once a district court determines that primary jurisdiction is appropriate, it may either stay proceedings or dismiss the case without prejudice." *Astiana*, 2015 WL 16000205 at *6; *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008) (affirming dismissal of case under primary jurisdiction doctrine).

Dismissal of the case is appropriate under the facts alleged.[5]

**A. Federal Regulation of Food and Drugs Generally**

The FDCA does not provide for a private cause of action or other private enforcement. To the contrary, the FDCA expressly provides that enforcement authority is reserved to the federal government (except only for certain limited, highly restricted proceedings that may be brought by a State itself in its own name). 21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States"). The FDA can either commence administrative enforcement actions or direct the

[5] Dismissal, not a stay, is appropriate under these facts. Since Plaintiff has alleged that Defendant introduced Super DMZ 2.0 in "early 2014" (Compl. ¶ 15) and made the challenged Angel Dust advertising in or around March 2014 (*id.* ¶ 21), statute of limitations is not a problem if the Court dismisses, as opposed to stays, this action. Moreover, there is no reason to suspect that further judicial proceedings in this case would be necessary. *Astiana*, 2015 WL 1600205, at *6.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

commencement of judicial actions through the Department of Justice, in which the FDA can seek, among other things, product seizures, injunctions, civil money penalties, and even criminal penalties. 21 U.S.C. §§ 332-334. Although there is no private right of action, private parties may avail themselves of the "citizen petition" process to raise their concerns with the FDA. 21 C.F.R. § 10.30.[6]

In 1994, Congress enacted a series of amendments to the FDCA to implement a comprehensive federal system for the regulation of dietary supplements. These amendments, known as the Dietary Supplement Health and Education Act ("DSHEA") (Pub. L. No. 103-417, 108 Stat. 4325-35) (codified in various sections of title 21 of the United States Code), operate to specifically regulate the manufacture, labeling, advertising and distribution of dietary supplements.

"Dietary Supplement" is intricately defined at 21 U.S.C. § 321(ff). Broadly, under DSHEA, a "dietary supplement" is defined as a product intended to supplement the diet that contains one or more of the following dietary ingredients: a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance for use to supplement the diet by increasing the total dietary intake; or a concentrate, metabolite, constituent, extract, or combination of any of the previously indicated ingredients. *Id.* DSHEA further provides that a "dietary supplement" is a "food" under the FDCA (and thus subject to the numerous general provisions in the FDCA regulating labeling and marketing of food), except where it is a "drug" and then is subject to other regulations under the FDCA. *See id.; see also* 21 U.S.C. § 343(s); 25 C.F.R. 101.36.

The DSHEA enacted specific labeling requirements for dietary supplements. 21 U.S.C. § 343(s). The FDA has also gone on to promulgate detailed regulations concerning the labeling of dietary supplements. 21 C.F.R. § 101.36.

---

[6] There is no evidence that Plaintiff has done this, or that the FDA is even aware of the alleged advertising issues claimed by Plaintiff.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**B. The Court Should Dismiss the First and Second Claims**

Section 43(a)(1)(B) of the Lanham Act makes actionable the placement into interstate commerce of a false or misleading representation about one's product. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010).

As set forth above, the FDCA, including DSHEA, provide a complex and comprehensive regulatory scheme regarding dietary supplements. They provide to the responsible agency, the FDA, the exclusive oversight, rule-making, and enforcement authority in this area —including on the exact issues in this lawsuit. Thus, where the "FDA has not yet determined how it will interpret and enforce its own regulations" district courts have declined "to usurp the FDA's authority." *Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F.Supp. 918, 934 (C.D. Cal. 1996).

Plaintiff points the Court to the Designer Anabolic Steroid Control Act of 2014 which Plaintiff alleges "explicitly banned analogs of substances previously banned, including Super DMZ 2.0." Compl. ¶ 18. As discussed above though, the ingredients in Defendant's products do not appear on the Designer Anabolic Steroid Control Act. In cases like this one where there is the absence of a clear directive from the FDA[7] on the legality of the Defendant's products as nutritional supplements, courts have dismissed the complaint.

---

7 Plaintiff may point to a letter sent by the FDA to Defendant on April 24, 2015, after the Complaint was filed, relating to AMP Citrate, or the recall of a few early lots of Super DMZ 2.0 on March 12, 2014. However, those acts do not reflect any final determination by the FDA, let alone even guidance, about which ingredients are legal or not. *See* 21 C.F.R. § 10.115(b)(3) ("Guidance documents do not include . . . warning letters . . . or other communications directed to individual persons or firms."); *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992) (warning letters and specific product seizures did not reflect a final determination by the FDA); *Holistic Candlers and Consumers Assoc. v. FDA*, 664 F.3d 940, 944-45 (D.C. Cir. 2012) (warning letters are "only 'informal and advisory'"). Warning letters give firms an opportunity to undertake "voluntary" changes, but they do not commit the FDA to action. *Holistic Candlers*, 664 F.3d at 944-45. Rather, the letters and the early recall (with no subsequent action by FDA on Super DMZ 2.0) prove Defendant's point, which is that the FDA – not the court system – has the primary jurisdiction to regulate dietary supplements and their labels. The FDA could have, but has not, declared the ingredients illegal. The Court should defer to the FDA on this subject.

For example, in *Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*, 1997 WL 94237, at *6-7 (D. Kan., Feb. 26, 1997) the district court dismissed claims that a product advertised and labeled as a "dietary supplement" was in fact not a "dietary supplement" and thus was "misbranded" and falsely advertised, stating that "such matters are more appropriately addressed to the FDA." Defendant had affirmatively represented that its product, Calphron, is a "dietary supplement." *Id.* at *7. The term dietary supplement, the court noted, is defined in 21 U.S.C. section 321(ff). *Id.* The defendant argued that any misbranding claim of the product as a "dietary supplement" could not be brought in the district court because it required the court to apply and interpret the FDCA. *Id.* The district court agreed, finding that "**it is not for this court to interpret and apply the statutory definition of 'dietary supplement.'**" *Id.* (emphasis added).

Likewise, here, it is not for this Court to interpret and apply the statutory definition of dietary supplement. Whether Super DMZ 2.0 and Angel Dust are lawful or unlawful dietary supplements is an issue for the FDA to decide.

Not surprisingly then, whether the products Defendant sells are "legal" or "illegal" is not for the Court to decide because "the allegation that the drugs are being sold *unlawfully* is an issue that would require a more complex finding from the agency." *JHP Pharmaceuticals, LLC v. Hospira, Inc.*, 52 F.Supp. 3d 992, *[8] (C.D. Cal. Oct. 7, 2014) (emphasis in original). "The question of legality [of Defendant's products] directly implicates the FDA's rulemaking authority. The determination of whether a drug…can be lawfully marketed under the FDCA involves complex issues of history, public safety, and administrative priorities that Congress has delegated exclusively to the FDA." *Id.* at *. Thus, in *JHP Pharmaceuticals* the court did not permit a Lanham Act claim to proceed where the plaintiff alleged that defendants were falsely representing that their products

[8] Pagination for this case is not available on Westlaw as of the filing of this brief.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

complied with all applicable laws because it could not proceed "without a clear statement by the FDA. To do so would be to arrogate the authority of the FDA to decide, at least in the first instance, the legality or illegality of marketing a particular substance." *Id.* at *. The *JHP Pharmaceuticals* court further noted that, "in order to resolve [Plaintiff's] Lanham Act claim based on a factual allegation that the Defendants are falsely claiming to comply with the law while in fact selling illegal products, the Court must resolve an issue that Congress has placed 'within the jurisdiction of an administrative body having regulatory authority,' under a comprehensive regulatory scheme. *Gen. Dynamics Corp.*, 828 F.2d at 1362. And, crucially, this is not a question that can be resolved without expertise. *Id.* Moreover, Congress's decision to centralize authority to determine the legality of drug sales in the FDA was obviously intended to provide 'uniformity of administration.' *Id.* **Thus, it seems clear that [Plaintiff's] Lanham Act claim with regard to legality requires a determination that is within the primary jurisdiction of the FDA.**" *Id.* at * (emphasis added); *see also U.S. v. General Dynamics Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987) ("The primary jurisdiction doctrine is thus essentially concerned with ensuring that administrative bodies possessed of both expertise and authority delegated by Congress pass on issues within their regulatory authority before consideration by the courts.").

The Ninth Circuit has also applied these principles in the medical device arena and precluded a plaintiff from challenging a defendant's marketing of a medical device where the FDA had not yet acted. Thus, in *PhotoMedex, Inc.*, 601 F.3d at 924, the court held that "a private action brought under the Lanham Act may not be pursued when, as here, the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation."

In *PhotoMedex*, the plaintiff filed federal and state law claims against defendants for false advertising and unfair competition based on alleged

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

misrepresentations in connection with a medical device. PhotoMedex alleged that Ra Medical falsely claimed that its laser had received FDA approval, when, in fact, it was materially different from the SurgiLight laser product it had licensed to use. *Id*. at 922. In holding that "[p]ermitting PhotoMedex's Lanham Act claim to proceed in the circumstances of this case would intrude on the exclusive government enforcement authority established under the FDCA" (*id*. at 925) the court reasoned that "[t]he statute assigns to the FDA the responsibility for taking enforcement action against Defendants." *Id*. at 928. "Testing the truth of PhotoMedex's claim would ... require a court usurp the FDA's prerogative to enforce the FDCA and to decide whether, under the FDCA and its regulations, the Pharos was similar enough to SurgiLight's laser to permit Defendants to rely on its 510(k) clearance." *Id.*

Similarly, in *Summit Technology* the plaintiff claimed that the defendant's products were falsely advertised as to whether defendant could "lawfully" import its products into the United States. 933 F.Supp. at 932. The FDA had sent warning letters to the defendant stating that the product could not be sold or imported into the United States. *Id.* at 926. Nevertheless, the court explained that "in order for this Court to test the truth of Defendant's apparent claim that it can legally import the Summit lasers, the Court would be required to perform an 'original interpretation' of the FDA regulations governing this area." *Id.* at 934. The court dismissed the Lanham Act claim as to this alleged false advertising because "the proper interpretation and enforcement of the relevant FDA regulation is not an issue properly decided 'as an original matter by a district court in a Lanham Act case.'" *Id.*

Here, determining whether Super DMZ 2.0 and Angel Dust are legal nutritional supplements requires a complicated analysis of the products, the labels, and application of FDA regulations, which is an analysis that Congress has determined the FDA should make in the first instance. The Court should thus

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

dismiss the Complaint and defer to the FDA's primary jurisdiction.

**CONCLUSION**

For the foregoing reasons, Defendant Blackstone respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

Dated: May 8, 2015

Respectfully submitted,

**VENABLE LLP**

By: /s/ Daniel S. Silverman
Daniel S. Silverman
Kimberly Culp
Attorneys for Defendant
BLACKSTONE LABS, LLC