Robert Tauler (SBN 241964)
Matthew J. Smith (SBN 240353)
Tauler Smith LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
Telephone: (310)746-5601
rtauler@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company, | CASE NO. 2:15-CV-01670-TJH-AS |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF SECTION 42 (a)(1)(B) OF THE THE LANHAM ACT AND CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)** |
| vs. | |
| BLACKSTONE LABS, a Florida Limited Liability Company; SINGERMAN & BRAUN, LLC , a Florida Limited Liability Company dba Prime Nutrition; HARDCORE VENTURES, LLC, a Washington Limited Liability Company; a; AARON SINGERMAN, an individual, PJ BRAUN, an individual, MITCH BARHAM, an individual, and DOES 1 through 10, inclusive, | **[DEMAND FOR A JURY TRIAL]** |
| Defendants. | |

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendants Blackstone Labs, LLC ("Blackstone"), Singerman & Braun LLC ("Prime"), Hardcore Ventures, LLC ("Hardcore"), Aaron Singerman, PJ Braun, and Mitch Barham, and in support thereof, avers as follows:

## INTRODUCTION

1.     This is a civil action arising from Defendants' false advertising and blatant misrepresentations regarding several of their nutritional supplements, including "Super DMZ 2.0," "Angel Dust," and "PWO/STIM" which are marketed as being natural supplements, when, in fact, they contain illegal synthetic ingredients.

2.     This action also seeks to enjoin the marketing and sale of pharmaceuticals, including generic Viagra under the brand name of "Hardcore Peptides."  Defendants are involved in a conspiracy to market and sell pharmaceuticals without medical oversight in violation of federal law.

3.     Defendants' false, misleading, illegal and deceptive practices have unjustly enriched Defendants at the expense of ND, and have caused ND extensive and irreparable harm, including, but not limited to, loss of revenue, disparagement, and loss of goodwill.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

5.     This Court has personal jurisdiction over Defendants because Defendants have, directly or through their intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised its nutritional supplement products in the United States, the State of

1

**FIRST AMENDED COMPLAINT**

California, and this district, including the products listed above.  Defendants have purposefully and voluntarily placed their supplements and misbranded drugs into the stream of commerce with the expectation that they will be purchased in this district.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district.  *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## **PARTIES**

7.    Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

8.    Defendant Blackstone Labs, LLC ("Blackstone") is a Florida limited liability company which lists 9605 Parkview Ave. Boca Raton, FL 33428 as its business address.

9.    Defendant Singerman & Braun LLC dba Prime Nutrition ("Prime") is a limited liability company located at 1120 Holland Dr. Suite 19, Boca Raton, FL 33487.

10.    Defendant Hardcore Ventures, LLC ("Hardcore") is a Washington limited liability company, which lists as a business address 14415 E Sprague Ave #5, Spokane Valley, WA 99216.

11.    Defendant Aaron Singerman ("Singerman") is an individual who, on information and belief, resides in Florida.

12.    Defendant PJ Braun ("Braun") is an individual who, on information and belief, resides in Florida.

13.    Defendant Mitch Barham ("Barham") is an individual who, on information and belief, resides in Washington state.

14.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1- 10, inclusive, and therefore sued these defendants by such fictitious

**FIRST AMENDED COMPLAINT**

names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

15.     The nutritional supplement industry is one of the fastest growing and most lucrative in the United States.  A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years.  The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act and other illegal activity.

### Plaintiff Nutrition Distribution & Mass FX Black

16.     Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for body building.

17.     Plaintiff has products in several categories of body building products, including pre-workouts, muscle-gainers, fat burners and male performance enhancement.

18.     Around 2011, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

19.     After devoting its resources for over a year on product development and testing, Plaintiff introduced "Mass FX Black" in April 2013.

### Defendants & Super DMZ 2.0

20.     Defendant Blackstone is a competing nutritional supplement company incorporated in Florida.

21.     On information and belief, Blackstone launched Super DMZ 2.0 in early 2014.  Super DMZ 2.0 has two main ingredients:  Dymethazine & Methylsten.  Super DMZ 2.0 combines 10 mg of methylstenbolone and 10 mg of dymethazine into a capsule

**FIRST AMENDED COMPLAINT**

to be taken orally.  These synthetic compounds were advertised as "comparable to popular supplements such as Dianabol and Anadrol [illegal steroids], the only difference is it's 100% legal!"   In fact, neither Dymethazine nor Methylsten have ever been legal by any measure.

### Illegal Ingredients in Super DMZ 2.0 Exposed

22.    On April 22, 2014, the Journal of Investigative Medicine published a research article documenting the severe health risks of Super DMZ 2.0.  The article concluded:  "Supplements like Super DMZ Rx 2.0 are relatively inexpensive, widely available online and over-the-counter, and unregulated. This is problematic because consumers are at risk of severe liver injury due to AAS, even when taken at manufacturer-recommended dosages."   Blackstone misleadingly makes no effort to disclose the scope of the risks associated with Super DMZ 2.0 to their customers.

23.    Blackstone has falsely marketed Super DMZ 2.0 since its inception in a multitude of ways.  Blackstone has falsely marketed their pro-hormone as a "nutritional supplement," giving users the massive gains of an illegal steroid and a false sense of security.  In reality, Blackstone and its executives, including Braun and Singerman, knew all along that their product was a synthetic analog of substances banned by the FDA and at no point did Super DMZ meet the definition for a nutritional supplement proscribed by that regulatory agency.

24.    Blackstone's false advertising is harmful to the marketplace for nutritional supplements and potentially to individual consumers.  Blackstone has created an illegitimate marketplace of young bodybuilders who will gain muscle "at all costs" who are not informed of the dangers of Blackstone's products.  Users of Super DMZ 2.0 have little incentive to use a natural product like MassFX until they are hurt or the product is taken off the shelves.

25.    Indeed, on December 13, 2014 President Obama signed into law the "Designer Anabolic Steroid Control Act of 2014," which explicitly banned the sale of specific "prohormones" and their analogs, including Super DMZ 2.0.  Defendant

**FIRST AMENDED COMPLAINT**

Singerman has gone on record lamenting Congress' regulatory efforts and stating that Super DMZ is a prohormone effected by the ban.

26.   In a video on Blackstone's Youtube channel dubbed "state of the union" published only days after the prohormone ban was signed into law, Defendants Singerman and Braun made light of the ban and told users that they could no longer sell prohormones.

27.   Amazingly, despite the clear illegality of Super DMZ under long-existing FDA regulations and an explicit law directed at prohormones, and despite Singerman & Braun's knowledge of their illegality as evidenced by numerous videos which have since been taken off line publicly, Blackstone continued to sell Super DMZ on its website well after Congress took action.

### Plaintiff's Pre-Workout "Super Size"

28.   Plaintiff also has a product in the pre-workout genre of nutritional supplements called Supersize, which directly competes with Defendants Blackstone and Prime's Angel Dust and PWO/STIM pre-workouts.  Due to the illegal ingredients in these Defendants' pre-workouts, however, Supersize has struggled for market share.

### Defendant Blackstone and Prime's Pre-Workouts

29.   On information and belief, Blackstone launched a pre-workout called Angel Dust in 2013, which contained DMAA, a supplement banned by the FDA in late 2013. Undeterred, in March 2014, Blackstone introduced a "new Angel Dust," which was advertised as containing a new "kick-ass" ingredient called "AMP Citrate."  The new Angel Dust was touted as "the strongest preworkout on the market" and Blackstone claimed that AMP Citrate was the "new DMAA" in its marketing materials.  AMP Citrate was consistently marketed as an ingredient derived from tea aroma, however, it is synthetically made and spiked into Angel Dust.

30.   Defendant Prime released PWO/STIM in late 2013 as well, which also contained AMP Citrate.  PWO/STIM was advertised as being "derived from a type of Chinese tea known as Pouchong," however, this is false.

31.     Around September 21, 2014, an independent study was published by Harvard researcher Peter Cohen (the "Harvard Study") confirming that so-called AMP Citrate is a synthetic compound created in a laboratory that is virtually identical to the banned DMAA.  The Harvard Study dubs the new compound "DMBA," due to the chemical similarities with DMAA.

32.     On April 24, 2015, the FDA sent letters to Blackstone and Prime regarding Angel Dust and PWO/STIM, respectively.  The letters indicated that the products were "adulterated" under Federal Food, Drug, and Cosmetic Act and falsely advertised as "nutritional supplements."  The letter also found that there was "no history of use or other evidence of safety establishing that DMBA will reasonably be expected to be safe when used as a dietary ingredient."

### "Hardcore Peptides"

33.     Defendants Hardcore, Blackstone, Braun, Singerman & Barham are also involved in a scheme to sell peptides and other pharmaceuticals to bodybuilders by way of a website called www.hardcorepeptides.com (the "Site").

34.     Defendant PJ Braun actively promotes the brand on numerous videos and social media across the internet, and Defendants Aaron Singerman and Mitch Barham are the listed Members of Defendant Hardcore Ventures LLC, the owner of the Hardcore Peptides site.

35.     Defendant Blackstone helps funnel its bodybuilding customers to Hardcore Peptides by inputting the customer's data on to Hardcore Peptides' marketing listserv.

36.     Although Defendant PJ Braun goes out of his way to say that the website is used for "research," it is clear from the type of marketing employed, the type of chemicals sold on the illegal Hardcore Peptides site, and the lack of specification as to the type of research would-be bodybuilders would be conducting, that, in reality, the above false statements are a pretense to elude the authorities.

37.     Defendants' false statements have helped make them millions -- a lifestyle they publicize with great relish.  In fact, the President of Blackstone Labs, PJ Braun, was

**FIRST AMENDED COMPLAINT**

on the cover of "Iron Man" magazine May 2015 issue under the subtitle "Rich & Fit: the inspiring lifestyle of PJ & Celeste Braun" complete with pictures of multiple exotic cars. Defendants' fortune, however, is built on a foundation of sand: they have been selling illegal and dangerous products for years, creating a sub-culture of consumers that have unwittingly come to believe that dangerous products are the norm.  Equity demands that Defendants pay for their misdeeds.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)

### (against Defendant Blackstone)

38.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

39.     Defendant Blackstone has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its "nutritional supplement" Super DMZ 2.0, namely, that it is a legal nutritional supplement, instead of truthfully stating that it is a synthetic prohormone that carries serious risk of liver damage, has never been cleared by the FDA, and has been explicitly banned by Congress.

40.     The use of such falsely marketed substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

41.     The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerns about the consequences of taking steroids or illegal substances.

42.     Defendant Blackstone has introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

**FIRST AMENDED COMPLAINT**

43.     Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Blackstone and the loss of goodwill in Plaintiff's products.  Indeed, Blackstone's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

44.     Defendant Blackstone's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

### SECOND CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

**(against Defendant Blackstone)**

45.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

46.     Defendant Blackstone has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its Angel Dust product, including that it is an all natural nutritional supplement, instead of truthfully stating that it is a synthetic compound untested on humans.  Blackstone never disclosed that AMP Citrate was a synthetic and potentially dangerously strong stimulant.

47.     The use of such falsely marketed substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

48.     The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerns about the health implications of taking synthetic compounds in large doses that have not been tested on humans.

**FIRST AMENDED COMPLAINT**

49.   Blackstone has introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

50.   Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Blackstone and the loss of goodwill in Plaintiff's products.  Indeed, Blackstone's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

51.   Defendant Blackstone's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

## THIRD CLAIM FOR RELIEF

### (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)

### (against Defendant Prime)

52.   Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

53.   Defendant Prime has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its PWO/STIM, including that its main ingredient is derived naturally from a tea aroma, instead of truthfully stating that it is a synthetic compound untested on humans.  Prime never disclosed that AMP Citrate was a synthetic and potentially dangerously strong stimulant.

54.   The use of such falsely marketed substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

**FIRST AMENDED COMPLAINT**

55.     The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerns about the health implications of taking synthetic compounds in large doses that have not been tested on humans.

56.     Prime has introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

57.     Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Prime and the loss of goodwill in Plaintiff's products.  Indeed, Prime's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

58.     Prime's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

## FOURTH CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

**(against Defendants Hardcore, Blackstone, Singerman, Braun, & Barham)**

59.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

60.     Defendants Hardcore, Blackstone, Singerman, Braun, & Barham (the "Conspiracy Defendants") have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of the products they promote and sell on the Site, including that they are intended for "research purposes only."

**FIRST AMENDED COMPLAINT**

61.     The Conspiracy Defendants false advertising has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

62.     The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is unaware of the serious risks of using products sold on the Site.

63.     Products on the Site, including GHRP-6 (mass building), Clenbuterol (fat burner), and Sildenafil (male performance enhancement) directly compete with Plaintiff's products, including body building supplement Mass FX, fat burner Stimulant X, and Axcite Magnum, respectively.

64.     The Conspiracy Defendants have introduced false statements into interstate commerce via marketing and advertising on various websites and shipment of their products into interstate commerce containing false advertising.

65.     Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to the Conspiracy Defendants and the loss of goodwill in Plaintiff's products.  Indeed, the Conspiracy Defendants' conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

66.     The Conspiracy Defendants actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of their products in violation of Section 43(a)(1)(B) of the Lanham Act.

### FIFTH CLAIM FOR RELIEF

### (Violation of RICO)

### (against Defendants Hardcore, Blackstone, Singerman, Braun, & Barham)

**FIRST AMENDED COMPLAINT**

67.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

68.     Under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301(g)(1) the term "drug" includes (1) any articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals, and (2) articles (other than food) intended to affect the structure or any function of the body of man or other animals.

69.     The introduction or delivery for introduction into interstate commerce of any misbranded drug is prohibited 21 U.S.C. § 331(a).  Misbranding encompasses dispensing without a prescription a drug intended for use by which, "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug."  21 U.S.C. § 353(b)(1).  A drug is also misbranded where its labeling was false or misleading in any particular (§ 352(a)), where its labeling does not bear adequate directions for use (§ 352(f)(1)), or where the drug was manufactured, prepared, propagated, compounded or processed in an establishment not registered with the Secretary of Health and Human Services (§ 352(o)).  The introduction or delivery for introduction into interstate commerce of a misbranded drug is a felony.  (§ 333(a)(2)).

70.     "Peptides" are chemical compounds containing 2 or more amino acids linked by the carboxyl group of 1 amino acid and the amino group of another.  Due to their toxicity or potential for harmful effect, peptides cannot be dispensed for human use without a prescription from a licensed medical practitioner.

71.     There is an illegitimate market for peptides among body builders and others who engage in weight training, since it is believed that the use of these substances enhance muscle development.

72.     Defendants Singerman and Barham formed Hardcore Ventures LLC on August 22, 2012.  Defendants Mitch Barham and Aaron Singerman are the sole listed members of the LLC.  Hardcore Ventures runs the website www.hardcorepeptides.com

(the "Site") which is engaged in a comprehensive scheme to obtain money and property by means of false and fraudulent pretenses, representations and promises, including the illicit sale of peptides and other pharmaceuticals.

73.     On the Site, several misbranded drugs are listed under tabs "peptides" "research liquids" and "research chemicals."  Additionally, there are disclaimers on the Site and in Hardcore's marketing materials that are part of a scheme designed to deceive regulators and internet service providers, but have no basis in reality.

74.     The drugs sold on the site are bodybuilding drugs, including the following: Anastrozole, used treat breast cancer; body builders use it to downcycle from steroid use. Clenbuterol, a sympathomimetic amine used by sufferers of breathing disorders as a decongestant; bodybuilders use it to burn fat.  Sildenafil (Viagra), used for erectile dysfunction and popular in the body building community to counteract the side effects of other drugs.  Additionally, the Site sells peptides like Melanotan II, GHRP-6 and PT-141.

75.     Defendant Blackstone is a popular brand for body building supplements. Once a user purchases a product online from Blackstone, that purchaser is automatically put on an email marketing list for the Site.  Defendant Blackstone further advertises the Site on its own message boards, on banner advertisements on its site, and on its social media accounts.

76.     Additionally, Defendant PJ Braun, a popular body builder in his own right, independently promotes the Site through a series of videos posted online to his followers on social media.  On a video posted on vimeo.com dated December 12, 2012, Braun introduces hardcore peptides as a company run by his "friends."  Braun goes out of his way to mention "research" that the hardcore peptides site is supposedly selling drugs for.

77.     Illegal distribution of peptides is facilitated by use of the Internet, through which substances could be sold without a prescription by sources in other countries, including the People's Republic of China.  The Conspiracy Defendants have knowingly sold the above drugs and peptides to be delivered by commercial interstate carrier.

**FIRST AMENDED COMPLAINT**

78.     The Conspiracy Defendants have violated the substantive RICO statute, 18 U.S.C.A. § 1962 as detailed above by receiving income from a pattern of racketeering activity engaging in interstate commerce.  Defendants Singerman, Barham & Braun have conspired among themselves to use Defendants Blackstone and Hardcore to engage in the above activity.

79.     Plaintiff has been injured in his business or property by reason of the Conspiracy Defendants violation of section 1962 by, *inter alia*, the diversion of sales to the Site, which sells products directly in competition with Plaintiff's products.

## SIXTH CLAIM FOR RELIEF

### (Violation of Cal. Bus. & Prof. C. § 17200)

### (against all Defendants)

80.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

81.     California Business and Professions Code. Section 17200 provides that "unfair competition shall mean and include and unlawful, unfair or fraudulent business act or practice."

82.     The Conspiracy Defendants engaged in illegal conduct by way of violating 21 U.S.C. § 331(a) and the federal RICO statute, as detailed above. Defendants Blackstone, Prime, and Hardcore have engaged in unlawful conduct by way of their violations of the Lanham Act.

83.     Defendants Blackstone, Prime, and Hardcore have engaged in "unfair" conduct by way of their false advertising as detailed above.  The Conspiracy Defendants have engaged in "unfair" conduct by way of their conspiracy to sell peptides and pharmaceuticals directly to body builders in direct competition with Plaintiff's products.

84.     By reason of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants from any further acts of unfair competition.  Defendants continuing

acts of unfair competition, unless enjoined, will cause irreparable damage to Plaintiff in that it will have no adequate remedy at law to compel Plaintiff to cease such acts, and no way to determine its losses proximately caused by such acts of Defendants.  Plaintiff is therefore entitled to a preliminary injunction and a permanent injunction against further unlawful and unfair conduct by Defendants.

85.    As a direct and proximate result of the Defendants' acts of unfair competition, Defendants have wrongfully taken Plaintiff's profits and the benefit of their creativity and investment of time, energy and money.  Defendants should therefore disgorge all profits from the above conduct and further should be ordered to perform full restitution to Plaintiff  as a consequence of Defendants' unlawful and unfair activities.

## PRAYER

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendants as follows:

1.    For preliminary and permanent injunctive relief enjoining Defendants from producing, licensing, marketing, or selling Super DMZ 2.0, Angel Dust, PWO/STIM;

2.    For preliminary and permanent injunctive relief enjoining Defendants from producing, licensing, marketing, or selling any peptides or pharmaceuticals as detailed above;

3.    For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;

4.    For an award of any and all of Defendants' profits arising from the foregoing false advertising in accordance with 15 U.S.C. § 1117 and other applicable laws;

5.    For restitution of all Defendants' ill-gotten gains;

6.    For treble damages in accordance with 15 U.S.C. § 1117;

7.    For treble damages in accordance with 18 U.S.C. § 1964;

**FIRST AMENDED COMPLAINT**

8.      For punitive damages;

9.      For costs and attorneys' fees; and

10.     Any other relief the Court may deem appropriate.

DATED:  May 25, 2015                    TAULER SMITH LLP

By: ___/s/ *Robert  Tauler* _____
Robert Tauler
NUTRITION DISTRIBUTION LLC

**FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED:  May 25, 2015                    TAULER SMITH LLP


By: ___/s/ *Robert  Tauler* _____
Robert Tauler
NUTRITION DISTRIBUTION LLC

**FIRST AMENDED COMPLAINT**