1

VENABLE LLP
Daniel S. Silverman (SBN 137864)
Email:   dsilverman@venable.com
Stephanie A. Montaño (SBN 276474)
Email:   samontano@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 229-9900
Facsimile:   (310) 229-9901

2

3

4

5

6

Kimberly Culp Cloyd (SBN 238839)
Email:   kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA  94111
Telephone:  (415) 653-3750
Facsimile:   (415) 653-3755

7

8

9

Attorneys for Defendants
BLACKSTONE LABS, LLC;
SINGERMAN & BRAUN, LLC
d/b/a Prime Nutrition;
AARON SINGERMAN; and
PJ BRAUN

10

11

12

**UNITED STATES DISTRICT COURT**

13

**CENTRAL DISTRICT OF CALIFORNIA**

14

15

16

NUTRITION DISTRIBUTION LLC, an
Arizona Limited Liability Company,

17

Plaintiff,

18

19

v.

20

BLACKSTONE LABS, a Florida Limited
Liability Company; SINGERMAN &
BRAUN, LLC, a Florida Limited Liability
Company d/b/a Prime Nutrition;
HARDCORE VENTURES, LLC, a
Washington Limited Liability Company;
AARON SINGERMAN, an individual,
PJ BRAUN, an individual, MITCH
BARHAM, an individual, and DOES 1
through 10, inclusive,

21

22

23

24

25

Defendants.

26

27

28

CASE NO. 2:15-cv-1670-TJH (ASx)

Hon. Terry J. Hatter Jr.
Courtroom 17 (Spring Street)

**DEFENDANTS BLACKSTONE
LABS, LLC, SINGERMAN &
BRAUN, LLC, AARON
SINGERMAN, AND PJ BRAUN'S
NOTICE OF MOTION AND
MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P.
12(b)(6); MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Hearing Date:  September 14, 2015
Time:  UNDER SUBMISSION

Action Filed:    March 6, 2015
First Amended Complaint Filed:
                      May 25, 2015
Trial Date:    None set

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

# NOTICE OF MOTION

TO THIS HONORABLE COURT, PLAINTIFF AND ITS ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on September 14, 2015, or as soon thereafter as counsel may be heard in Courtroom 17 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants Blackstone Labs, LLC ("Blackstone"), Singerman & Braun LLC d/b/a Prime Nutrition ("Prime"), Aaron Singerman, and PJ Braun[1] (collectively "Defendants") will and do hereby move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the First Amended Complaint filed May 25, 2015 ("FAC") for failure to state a claim upon which relief may be granted.

Good cause exists to grant this motion, as follows:

(1)   Plaintiff's First Claim for Relief (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act) fails to state a claim upon which relief may be granted against Defendant Blackstone;

(2)   Plaintiff's Second Claim for Relief (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act) fails to state a claim upon which relief may be granted against Defendant Blackstone;

(3)   Plaintiff's Third Claim for Relief (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act) fails to state a claim upon which relief may be granted against Defendant Prime;

(4)   Plaintiff's Fourth Claim for Relief (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act) fails to state a claim upon which relief may be granted against Defendants Blackstone, Singerman and Braun;

(5)   Plaintiff's Fifth Claim for Relief (RICO) fails to state a claim upon

---

[1] Defendants concurrently filed a Motion to Dismiss for Lack of Personal Jurisdiction over Singerman and Braun under Fed. R. Civ. P. 12(b)(2) and by participating in this motion to dismiss do not waive their rights to contest personal jurisdiction over them in this Court.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

which relief may be granted against Defendants Blackstone, Singerman and Braun; and

(6)    Plaintiff's Sixth Claim for Relief (California Business and Professions Code section 17200) fails to state a claim upon which relief may be granted against Defendants Blackstone, Prime, Singerman and Braun.

This motion is based on the instant notice, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which occurred telephonically on July 24, 2015.

Dated:  August 3, 2015        **VENABLE LLP**

By:  /s/ Daniel S. Silverman
      Daniel S. Silverman
      Kimberly Culp Cloyd
      Stephanie A. Montaño
Attorneys for Defendants
BLACKSTONE LABS, LLC
SINGERMAN & BRAUN LLC d/b/a
Prime Nutrition, AARON
SINGERMAN, and PJ BRAUN

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

# **TABLE OF CONTENTS**

**Page(s)**

I.    PRELIMINARY STATEMENT..................................................................1

II.   PROCEDURAL HISTORY ....................................................................3

III.  STATEMENT OF FACTS.......................................................................3

    A.    PLAINTIFF'S FIRST CLAIM FOR RELIEF................................3

    B.    PLAINTIFF'S SECOND AND THIRD CLAIMS FOR
          RELIEF ....................................................................................4

    C.    PLAINTIFF'S FOURTH AND FIFTH CLAIMS FOR RELIEF ......4

IV.   LEGAL STANDARD ...........................................................................5

V.    ARGUMENT ......................................................................................6

    A.    BECAUSE PLAINTIFF HAS NOT ALLEGED (AND
          CANNOT ALLEGE) A FALSE OR MISLEADING
          STATEMENT OF FACT ABOUT SUPER DMZ 2.0, ANGEL
          DUST, OR PWO/STIM THE COURT SHOULD DISMISS
          THE FIRST, SECOND, AND THIRD CLAIMS WITH
          PREJUDICE........................................................................6

          1.    Plaintiff Fails To Meet The Pleading Standards Of Rule
                8, Let Alone The Heightened Pleading Standards Of Rule
                9(b) Applicable To The First, Second, Third, And Fourth
                Claims ..........................................................................6

          2.    PWO/STIM And Angel Dust Were Not Advertised As
                "Derived From Tea Aroma" ............................................7

          3.    Super DMZ 2.0, Angel Dust, And PWO/STIM Are Not
                "Illegal"........................................................................8

    B.    UNDER THE PRIMARY JURISDICTION DOCTRINE THE
          COURT SHOULD DEFER TO THE FDA'S JURISDICTION
          ON THE PRODUCTS AT ISSUE AND DISMISS
          PLAINTIFF'S FIRST, SECOND AND THIRD CLAIMS...............9

          1.    Federal Regulation of Food and Drugs Generally..................10

          2.    The Court Should Dismiss the First, Second, and Third
                Claims ........................................................................12

    C.    THE FOURTH CLAIM FOR RELIEF SHOULD BE
          DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A
          CLAIM THAT DEFENDANT BLACKSTONE,
          SINGERMAN, AND BRAUN – NONE OF WHOM
          CONTROL THE SITE – HAVE MADE ANY

**V E N A B L E  L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

ADVERTISEMENT OR CONSPIRED IN ANY WAY TO FALSELY ADVERTISE ON THE SITE .......................................... 16

D.   THE FIFTH CLAIM FOR RELIEF SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A RICO CLAIM AGAINST BLACKSTONE, SINGERMAN, OR BRAUN ............. 18

   1.   Plaintiff Fails To Allege A Pattern Of Racketeering Activity ......................................................................... 18

   2.   Plaintiff Fails to Adequately Allege A Purported Enterprise ................................................................. 19

   3.   Plaintiff Fails to Exclude the Obvious Alternate Explanation .............................................................. 20

   4.   Plaintiff Fails To Adequately Allege Defendants Conducted Or Participated In An Enterprise ......................... 20

   5.   Plaintiff Lacks Standing Under The RICO Statute ............... 21

E.   PLAINTIFF'S SIXTH CLAIM FOR RELIEF FAILS BECAUSE ALL PREDICATE CLAIMS SHOULD BE DISMISSED ................................................................ 22

F.   THE COURT SHOULD DISMISS ALL CLAIMS WITH PREJUDICE BECAUSE PLAINTIFF HAS ALREADY ONCE AMENDED ITS COMPLAINT AND AMENDMENT WOULD BE FUTILE ............................................................ 22

VI.   CONCLUSION ............................................................ 23

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
9872896-v7

# TABLE OF AUTHORITIES

## CASES

*Ascon Properties, Inc. v. Mobil Oil Co.*
866 F.2d 1149 (9th Cir. 1989)............................................................ 6

*Ashcroft v. Iqbal*
129 S.Ct. 1937 (2009) ...................................................................... 6

*Astiana v. Hain Celestial Group, Inc.*
783 F.3d 753 (9th Cir. 2015) ............................................................ 10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)...................................................................... 5, 20

*Biotics Research Corp. v. Heckler*
710 F.2d 1375 (9th Cir. 1983) .......................................................... 13

*Boyle v. United States*
556 U.S. 938 (2009) ........................................................................ 19

*Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*
1997 WL 94237 (D. Kan., Feb. 26, 1997) ......................................... 13

*Chagby v. Target Corp.*
No. CV 08-4425-GHK (PJWx), 2008 WL 5686105 (C.D. Cal. Oct.
27, 2008) ......................................................................................... 19

*Clark v. Time Warner Cable*
523 F.3d 1110 (9th Cir. 2008).......................................................... 10

*Dietary Supplemental Coalition, Inc. v. Sullivan*
978 F.2d 560 (9th Cir. 1992)............................................................ 12

*DuBois v. Ford Motor Co.*
276 F.3d 1019 (8th Cir. 2002) ........................................................... 4

*Eclectic Props. E. LLC v. Marcus & Millichap Co.*
751 F.3d 990 (9th Cir. 2014) ...................................................... 18, 19

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*
711 F. Supp.2d 1074 (C.D. Cal. 2010)............................................... 7

*Edwards v. Marin Park, Inc.*
356 F.3d 1058 (9th Cir. 2004).......................................................... 18

*H.J. Inc. v. Northwestern Bell Tel. Co.*
492 U.S. 229 (1989) ........................................................................ 18

*Holistic Candlers and Consumers Assoc. v. FDA*
664 F.3d 940 (D.C. Cir. 2012) .................................................... 12, 13

*Holmes v. Secs. Inv. Prot. Corp.*
503 U.S. 258 (1992) ........................................................................ 21

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

iii

*In Re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*
    758 F.Supp.2d 1077 (S.D. Cal. 2010) .................................................... 7, 17

*JHP Pharmaceuticals, LLC v. Hospira, Inc.*
    52 F.Supp. 3d 992 (C.D. Cal. Oct. 7, 2014).......................................... 14

*Lopez v. Smith*
    203 F.3d 1122 (9th Cir. 2000)................................................................... 22

*Michael v. New Century Fin. Servs.*
    Case No. 13-cv-03892-BLF, 2015 WL 1404939 (N.D. Cal. Mar. 30, 2015).......................................................................................................... 22

*Mohebbi v. Khazen*
    50 F. Supp. 3d 1234 (N.D. Cal. June 23, 2014) ....................................... 21

*Moore v. Kayport Package Exp., Inc.*
    885 F.2d 531(9th Cir. 1989) ..................................................................... 20

*O'Toole v. Gencor Nutrients, Inc.*
    Case No. 14-03754-R, 2014 U.S. Dist. LEXIS 183343 (C.D. Cal. July 23, 2014)................................................................................................... 19

*Odom v. Microsoft Corp.*
    486 F.3d 541 (9th Cir. 2007) ..................................................................... 5

*Pellerin v. Honeywell Intern., Inc.*
    877 F. Supp.2d 983 (S.D. Cal. 2012) ....................................................... 22

*PhotoMedex, Inc. v. Irwin*
    601 F.3d 919 (9th Cir. 2010) ............................................................. 12, 15

*Reffin v. Microsoft Corp.*
    No. C 11-03505 CRB, 2012 WL 1309179 (N.D. Cal. Apr. 16, 2012) ...... 22

*Reves v. Ernst & Young*
    507 U.S. 170 (1993) ................................................................................... 20

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*
    630 F.3d 866 (9th Cir. 2010) ..................................................................... 18

*Rice v. Fox Broadcasting Co.*
    330 F.3d 1170 (9th Cir. 2003) ................................................................... 17

*Robertson v. Dean Witter Reynolds, Inc.*
    749 F.2d 530 (9th Cir. 1984) ..................................................................... 5

*Salas v. Int'l Union of Operating Eng'rs*
    No. CV 12-10506 DDP (VBKx), 2015 WL 728365 (C.D. Cal. Feb. 18, 2015)................................................................................................... 20

*Sanford v. MemberWorks, Inc.*
    625 F.3d 550 (9th Cir. 2010) ..................................................................... 18

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
9872896-v7

*Saul v. U.S.*
   928 F.2d 829 (9th Cir. 1991)..................................................................... 22

*Sedima, S.P.R.L. v. Imrex Co.*
   473 U.S. 479 (1985) .......................................................................... 18, 21

*Semegen v. Weidner*
   780 F.2d 727 (9th Cir. 1985) ....................................................................... 5

*Stitt v. Citibank, N.A.*
   Case No. 12-cv-03892-YGR, 2015 WL 75237 (N.D. Cal. Jan. 6, 2015)........................................................................................................ 19

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*
   933 F.Supp. 918 (C.D. Cal. 1996)........................................................ 12, 16

*Swartz v. KPMG LLP*
   476 F.3d 756 (9th Cir. 2007)................................................................. 5, 8

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*
   307 F.3d 775 (9th Cir. 2002)..................................................................... 10

*U.S. v. General Dynamics Corp.*
   828 F.2d 1356 (9th Cir. 1987)............................................................. 14, 15

*Western Mining Council v. Watt*
   643 F.2d 618 (9th Cir. 1981)....................................................................... 5

## STATUTES

18 U.S.C. § 1961(5) ....................................................................................... 18

18 U.S.C. § 1964(c) ....................................................................................... 21

21 C.F.R. § 10.115(b)(3) ............................................................................... 12

21 C.F.R. § 10.30 ........................................................................................... 11

21 C.F.R. § 101.36 ......................................................................................... 12

21 U.S.C. § 321(ff) .................................................................................. 11, 13

21 U.S.C. § 337(a) ......................................................................................... 10

21 U.S.C. § 343(s) .................................................................................. 11, 12

21 U.S.C. § 802(41)(A)(i)-(xlx) ...................................................................... 9

21 U.S.C. §§ 332-334 ................................................................................... 11

25 C.F.R. § 101.36 ......................................................................................... 11

Fed. R. Civ. P. 9(b) ......................................................................................... 7

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     PRELIMINARY STATEMENT

Plaintiff Nutrition Distribution, LLC d/b/a Athletic Xtreme ("ND" or "Plaintiff") hypocritically complains, albeit incorrectly, that Defendant Blackstone sells two "illegal" products and that Defendant Prime sells another, as Plaintiff has previously been judged guilty in a criminal case for selling illegal products, following charges brought by the Federal Government.[2]  As Plaintiff well knows from that experience, it is the Government, not private plaintiffs, who enforce the Food, Drug and Cosmetic Act ("FDCA").  And it is the Food and Drug Administration ("FDA"), not private plaintiffs, who determine what is, and is not, an illegal product.

Plaintiff's claims should be dismissed because they fail to allege any false or misleading statement of fact.  And, assuming *arguendo* that they do plead such facts, they intrude on the exclusive domain of the FDA and its duty to determine what are legal and "illegal" dietary supplements.

First, Plaintiff claims that two of Defendant Blackstone's products – Super DMZ 2.0 and Angel Dust – contain "illegal" ingredients and are, therefore, falsely advertised as nutritional supplements.  Likewise, Plaintiff claims that ingredients in Defendant Prime's PWO/STIM product contains "illegal" ingredients.  However, none of the ingredients listed on these labels have been declared "illegal" by Congress or the FDA.

/ / /

/ / /

---

[2]  In October 2011, the United States of America separately charged two companies, Nutrition Distribution, Inc. and Anabolic Resources (the predecessors of ND) owned by ND's owner, Kevin Smith, with the intent to defraud and mislead by introduction into interstate commerce three unapproved drugs "Anabolic Xtreme Hyperdrol," "Anabolic Xtreme Slim Xtreme," and "Anabolic Resources Superdrol."  In November 2011, ND's predecessors plead guilty to the charges.  They were sentenced and had to forfeit $100,000 (for one), were fined $500,000 (the other), and each agreed to monitoring and testing by the FDA of all products distributed by them and their successor companies for a period of 5 years.

1

9872896-v7

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

Moreover, the regulatory issue of whether Super DMZ 2.0, Angel Dust, and PWO/STIM are "illegal" dietary supplements is improperly presented to this Court in the context of this private false advertising litigation. The determination of this issue is in fact squarely within the exclusive province of the FDA itself — as the relevant agency charged with enforcing the complex and comprehensive regulatory scheme governing the labeling and marketing of "dietary supplement" products.

In short, this case calls for factual and legal determinations that should be resolved first by the responsible agency, the FDA, guided by its own technical expertise and policy objectives. The Court should thus defer to the "primary jurisdiction" of the FDA, as the agency charged with interpreting and applying federal regulations regarding dietary supplement labeling and marketing.

Second, Defendant Blackstone's Angel Dust and Defendant Prime's PWO/STIM are not falsely or misleadingly advertised as "derived naturally from tea aroma."

Third, Plaintiff's conclusory pleading does not state a claim that Blackstone, Singerman or Braun are responsible for any advertising claims on the Hardcore Peptides website.

Fourth, Plaintiff fails to state a claim for RICO violations because Plaintiff fails to allege any conduct, or an enterprise, or any predicate act by Blackstone, Singerman or Braun. Moreover, even if Plaintiff had adequately plead a RICO claim, Plaintiff lacks standing to bring a RICO claim.

Finally, because all of the causes of action against the moving Defendants fail as a matter of law, the California Unfair Competition cl

aim based upon those causes of action also fails.

The Court should dismiss Plaintiff's First Amended Complaint ("FAC") against the moving Defendants without leave to amend.

/ / /

/ / /

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

## II.   PROCEDURAL HISTORY

On March 6, 2015, Plaintiff Nutrition Distribution LLC filed a complaint (the "Complaint") against Blackstone Labs in this Court.  Dkt. #1.  The Complaint included two claims for relief, and essentially alleged that Blackstone's Super DMZ 2.0 and Angel Dust were "illegal."  Dkt. # 1 ¶¶ 15, 21.  Plaintiff sought relief under Section 43(a)(1)(B) of the Lanham Act.

On May 8, 2015, Blackstone moved to dismiss the Complaint primarily because its products are not illegal.  Dkt. # 13.  Rather than opposing the motion to dismiss, on May 25, 2015, Plaintiff filed the FAC.  Dkt. #17.

## III.   STATEMENT OF FACTS[3]

Plaintiff is a supplement manufacturer and marketer.  FAC ¶ 16.

Defendant Blackstone is also a nutritional supplement company, located in Florida.  *Id.* ¶ 20.  Defendant Prime is a limited liability company located in Florida (*id.* ¶ 9) that sells a product called PWO/STIM.

Defendants Singerman and Braun are individuals who reside in Florida.  *Id.* ¶¶ 11-12.

## A.   PLAINTIFF'S FIRST CLAIM FOR RELIEF

One of Defendant Blackstone's products is Super DMZ 2.0, which has two main ingredients:  Dymethazine & Methylsten.  *Id.* ¶ 21.  Defendant advertised Super DMZ 2.0 as "100% legal."  *Id.*  Plaintiff erroneously contends that neither Dymethazine nor Methylsten are "legal."  *Id.*

Plaintiff alleges that Dymethazine & Methylsten are "synthetic analog[s] of substances previously banned by Congress."  *Id.*  Plaintiff does not allege that Congress (or the FDA) has banned either Dymethazine or Methylsten.  *Id.* ¶ 25.[4]

---

[3]  For purposes of this motion only, Defendants assume all facts alleged in the Complaint to be true, unless the Court is permitted to take judicial notice of contradictory facts.

[4]  Although the facts alleged in a complaint are accepted as true, the Court is "not required to read in missing facts necessary to perfect" Plaintiff's claims.  *DuBois v. Ford Motor Co.*, 276

3

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    Defendant has further advertised Super DMZ 2.0 as a "nutritional

2    supplement." *Id.* ¶ 23.

3    **B.    PLAINTIFF'S SECOND AND THIRD CLAIMS FOR RELIEF**

4         Another of Defendant Blackstone's products is Angel Dust. *Id.* ¶ 29.  Angel

5    Dust contains the ingredient AMP Citrate. *Id.*  Defendant Prime also sells a

6    product, PWO/STIM, which contains the ingredient AMP Citrate. *Id.* ¶ 30

7         Plaintiff alleges that AMP Citrate is a "virtually identical" synthetic analog

8    of the illegal substance DMAA. *Id.* ¶ 31.  Plaintiff does not allege that AMP

9    Citrate has been banned by either Congress or the FDA.

10        On April 24, 2015, the FDA sent letters to Defendants Blackstone and Prime

11   about Angel Dust and PWO/STIM, indicating that they were "adulterated" and not

12   "nutritional supplements." *Id.* ¶ 32.

13   **C.    PLAINTIFF'S FOURTH AND FIFTH CLAIMS FOR RELIEF**

14        Defendant Hardcore Ventures LLC (not a party to this motion) is the owner

15   of www.hardcorepeptides.com (the "Site"). *Id.* ¶ 33.  Plaintiff alleges that

16   Defendant Singerman is one of the members of Hardcore Ventures LLC. *Id.* ¶ 34.

17        The Site allegedly sells "illegal" chemicals. *Id.* ¶ 36.  It allegedly sells

18   "misbranded drugs" that are listed under tabs "'peptides'[,] 'research liquids' and

19   'research chemicals.'" *Id.* ¶ 73.

20        Defendant Braun allegedly "promotes" the Site (or "the brand") "on

21   numerous videos and social media." *Id.* ¶ 34.  In his alleged promotion of the Site,

22   Braun says that the website is used for research. *Id.* ¶ 36.  Plaintiff claims that this

23   is false and that the Site is "a pretense to elude the authorities." *Id.*

24        Plaintiff alleges that "[o]nce a user purchases a product online from

25   Blackstone, that purchaser is automatically put on an email marketing list for the

26   Site." *Id.* ¶ 75.  Plaintiff alleges that "Defendant Blackstone further advertises the

27

28   F.3d 1019, 1024 (8th Cir. 2002).  Defendant highlights the deficiencies in Plaintiff's factual
     allegations as missing facts that could not be alleged (because they are not true).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
9872896-v7

1   Site on its own message boards, on banner advertisements on its site, and on its

2   social media accounts." *Id.*  Defendant Blackstone is not alleged to have

3   advertised that the Site is for "research" purposes only, or in some other way

4   falsely or misleadingly advertised the Site.

5   ## IV.   LEGAL STANDARD

6   A complaint must be dismissed as a matter of law when it (1) "lack[s] a

7   cognizable legal theory" or (2) states "insufficient facts under a cognizable legal

8   claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533 (9th Cir.

9   1984).

10   Rule 9(b) requires a plaintiff to make allegations "specific enough to give

11   defendants notice of the particular misconduct which is alleged to constitute the

12   fraud charged so that they can defend against the charge and not just deny that they

13   have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

14   1985).  Thus, a complaint must set forth "an account of the time, place, and

15   specific content of the false representations as well as the identities of the parties to

16   the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)

17   (internal quotations omitted).

18   In deciding a motion to dismiss pursuant to Rule 12(b)(6), "[a]llegations in

19   the complaint, together with reasonable inferences therefrom, are assumed to be

20   true." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).  The court

21   may not, however, accept as true unreasonable inferences or conclusory legal

22   allegations cast in the form of factual allegations.  *See Western Mining Council v.

23   Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  A "plaintiff's obligation to provide the

24   'grounds' of his 'entitle[ment] to relief requires more than labels and conclusion,

25   and a formulaic recitation of the elements of a cause of action will not do." *Bell

26   Atl. Corp. v. Twombly*, 550 U.S. 544, 1964-65 (2007).

27   / / /

28   / / /

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

5

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

At minimum, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation and quotation omitted). Where a complaint only pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation and quotations omitted). Pleadings that are "no more than conclusions" are "not entitled to the assumption of truth." *Id*. at 1950.

Upon dismissal of a complaint pursuant to Rule 12(b)(6), leave to amend need not be granted where the amendment "would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

In this case, leave to amend would be futile. As such, the FAC should be dismissed with prejudice.

## V.   ARGUMENT

**A.   BECAUSE PLAINTIFF HAS NOT ALLEGED (AND CANNOT ALLEGE) A FALSE OR MISLEADING STATEMENT OF FACT ABOUT SUPER DMZ 2.0, ANGEL DUST, OR PWO/STIM THE COURT SHOULD DISMISS THE FIRST, SECOND, AND THIRD CLAIMS WITH PREJUDICE**

1.   **Plaintiff Fails To Meet The Pleading Standards Of Rule 8, Let Alone The Heightened Pleading Standards Of Rule 9(b) Applicable To The First, Second, Third, And Fourth Claims**

Plaintiff alleges that Defendant Blackstone falsely "marketed" Super DMZ 2.0 in a "multitude of ways" (FAC ¶ 23), that Defendant Blackstone had "marketing materials" for Angel Dust (*id*. ¶ 29), and that Prime "advertised" PWO/STIM (*id*. ¶ 30). None of these allegations satisfy the minimal pleading

6

standards of Federal Rule of Civil Procedure 8(a). *See In Re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F.Supp.2d 1077, 1093 (S.D. Cal. 2010) (plaintiff failed to identify specific advertisements alleged to be false advertising, when and where they were shown, and why there untrue or misleading and therefore failed to meet Rule 8 pleading standard).

Yet, because the FAC sounds in fraud, Plaintiff must satisfy the stricter pleading standard of Rule 9(b), which it fails to do. FAC ¶¶ 23, 29, 36; *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp.2d 1074, 1085 (C.D. Cal. 2010) (applying Rule 9(b) to Lanham Act false advertising claim grounded in fraud). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), Plaintiff must state the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *EcoDisc Tech. AG*, 711 F. Supp.2d at 1085. Plaintiff fails to plead any of these specifics. Thus, Plaintiff's claims based on the Lanham Act (claims 1-4) must be dismissed.

2. **PWO/STIM And Angel Dust Were Not Advertised As "Derived From Tea Aroma"**

Plaintiff alleges that "AMP Citrate was consistently marketed as an ingredient derived from tea aroma, however, it is synthetically made and spiked into Angel Dust." FAC ¶ 29. Plaintiff does not, however, allege that Blackstone advertised Angel Dust as derived from tea aroma. In fact, the label to Angel Dust does not reference any tea or tea aroma. *See* Request for Judicial Notice ("RFJN"), filed herewith, at Exhibit 1. And Plaintiff does not allege any specific advertising of Angel Dust that referred to tea or tea aroma.

Likewise, Plaintiff alleges that PWO/STIM "was advertised as being 'derived from a type of Chinese tea known as Pouchong.'" FAC ¶ 30. However,

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

7

1   the label to PWO/STIM does not reference any tea or tea aroma.  *See* RFJN,

2   Exhibit 2.  Plaintiff also does not allege any specific advertising of PWO/STIM

3   that referred to tea or tea aroma.

4        Because Plaintiff has referred to the advertising in its complaint, the Court

5   may take judicial notice of the Angel Dust and PWO/STIM labels.  *Swartz v.*

6   *KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (the incorporation by reference

7   doctrine permits a court to "consider a writing referenced in the complaint but not

8   explicitly incorporated therein if the complaint relies on the document and its

9   authenticity is unquestioned").  Nowhere on the labels do Blackstone or Prime

10  refer to tea, tea aroma, Pouchong tea, or the derivation of AMP Citrate, let alone

11  make the actual statement that Plaintiff alleges was made.  *See* RFJN, Exhibits 1

12  and 2.  Therefore, the Court should dismiss Plaintiff's Second and Third Claims for

13  relief.

14        3.   **Super DMZ 2.0, Angel Dust, And PWO/STIM Are Not "Illegal"**

15        Plaintiff claims that Defendants Blackstone and Prime have falsely labeled

16  three products: Super DMZ 2.0, Angel Dust, and PWO/STIM (collectively the

17  "Allegedly Illegal Products").  FAC ¶¶ 21, 28.  Plaintiff has alleged Defendant

18  Blackstone made false or misleading statements of fact about Super DMZ 2.0 that

19  it is a legal "nutritional supplement" when it is in fact "illegal."  *Id.* ¶ 23.

20  Likewise, Plaintiff has alleged that Angel Dust and PRO/STIM are synthetic

21  analogs of the illegal substance DMAA.  *Id.* ¶¶ 29-31.  Plaintiff is, apparently,

22  challenging the label of the products as nutritional supplements, claiming instead

23  that they are illegal products by virtue of their ingredients.

24        However, the challenged ingredients in these products – Dymethazine,

25  Methylsten, and AMP Citrate – are not listed as "illegal" substances by Congress

26  or the FDA.  Plaintiff, for example, directs the Court to the Designer Anabolic

27  Steroid Control Act of 2014 (*id.* ¶ 25), which does indeed provide an extensive list

28  of ingredients that are defined as "anabolic steroids."  21 U.S.C. § 802(41)(A)(i)-

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

8

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

(xlx).  Significantly, Dymethazine, Methylsten, and AMP Citrate are not on that list.  *Id.*  Nor is there any other statute or regulation that lists these ingredients as illegal ingredients in a nutritional supplement.  As such, the ingredients are not illegal, and thus the labels listing the products as nutritional supplements, are not false or misleading as a matter of law.

Plaintiff relies on a study published by Pieter Cohen at Harvard (the "Harvard Study") to conclude that AMP Citrate is in fact DMBA which is "virtually identical to the banned DMAA" and thus Angel Dust and PRO/STIM are "illegal."  FAC ¶ 31.  DMBA is also not listed as an "illegal" ingredient.  Even if it were, the Harvard Study did not conclude that <u>all</u> supplements that list AMP Citrate as an ingredient necessarily include DMBA.  *See* RFJN, Exhibit 3.[5]  Rather, Dr. Cohen's study looked at 14 supplements that were suspected to contain DMBA and only 12 actually contained the ingredient.  *Id.*  Moreover, neither of the challenged products here was subject to Dr. Cohen's study.  *Id.*  Thus, the study does not establish that DMBA is present in either Angel Dust or PRO/STIM.

At bottom, Plaintiff has alleged that Defendant's products are illegal.  Yet, there is no statute or regulation that makes either product "illegal."  Moreover, whether the ingredients are "illegal" is within the province of the FDA, not this Court, to first determine.

**B.**   **<u>UNDER THE PRIMARY JURISDICTION DOCTRINE THE COURT SHOULD DEFER TO THE FDA'S JURISDICTION ON THE PRODUCTS AT ISSUE AND DISMISS PLAINTIFF'S FIRST, SECOND AND THIRD CLAIMS</u>**

Whether or not the ingredients in the Allegedly Illegal Products are "illegal" is a question for the FDA, in the absence of any clear directive from Congress.  As discussed above, Congress has acted and has <u>not</u> determined that the ingredients in

---

[5] Because Plaintiff has referred to the study in the FAC, the Court may take judicial notice of the study.  *Swartz*, 476 F.3d at 763.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
9872896-v7

Defendants' products are illegal.  Whether the FDA will determine Defendants' products to be legal nutritional supplements is a question within the primary jurisdiction of the FDA, not this Court in the first instance because it requires an evaluation of the products, the labels, and application of a complex regulatory scheme.

In evaluating primary jurisdiction, the court considers "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) *quoting Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).  "Once a district court determines that primary jurisdiction is appropriate, it may either stay proceedings or dismiss the case without prejudice."  *Astiana*, 783 F.3d at 761; *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008) (affirming dismissal of case under primary jurisdiction doctrine).

Dismissal of the case is appropriate under the facts alleged.[6]

### 1.   **Federal Regulation of Food and Drugs Generally**

The FDCA does not provide for a private cause of action or other private enforcement.  To the contrary, the FDCA expressly provides that enforcement authority is reserved to the federal government (except only for certain limited, highly restricted proceedings that may be brought by a State itself in its own name).  21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States").

---

[6]  Dismissal, not a stay, is appropriate under these facts.  Since Plaintiff has alleged that Defendant Blackstone introduced Super DMZ 2.0 in "early 2014" (FAC ¶ 21) and made the challenged Angel Dust advertising in or around March 2014 (*id.* ¶ 29) and that Defendant Prime introduced PWO/STIM in "late 2013" (*id.* ¶ 30), statute of limitations is not a problem if the Court dismisses, as opposed to stays, this action.  Moreover, there is no reason to suspect that further judicial proceedings in this case would be necessary.  *Astiana*, 783 F.3d at 761.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   The FDA can either commence administrative enforcement actions or direct the

2   commencement of judicial actions through the Department of Justice, in which the

3   FDA can seek, among other things, product seizures, injunctions, civil money

4   penalties, and even criminal penalties.  21 U.S.C. §§ 332-334.  Although there is

5   no private right of action, private parties may avail themselves of the "citizen

6   petition" process to raise their concerns with the FDA.  21 C.F.R. § 10.30.[7]

7        In 1994, Congress enacted a series of amendments to the FDCA to

8   implement a comprehensive federal system for the regulation of dietary

9   supplements.  These amendments, known as the Dietary Supplement Health and

10  Education Act ("DSHEA") (Pub. L. No. 103-417, 108 Stat. 4325-35) (codified in

11  various sections of title 21 of the United States Code), operate to specifically

12  regulate the manufacture, labeling, advertising and distribution of dietary

13  supplements.

14       "Dietary Supplement" is intricately defined at 21 U.S.C. § 321(ff).  Broadly,

15  under DSHEA, a "dietary supplement" is defined as a product intended to

16  supplement the diet that contains one or more of the following dietary ingredients:

17  a vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance

18  for use to supplement the diet by increasing the total dietary intake; or a

19  concentrate, metabolite, constituent, extract, or combination of any of the

20  previously indicated ingredients.  *Id.*  DSHEA further provides that a "dietary

21  supplement" is a "food" under the FDCA (and thus subject to the numerous

22  general provisions in the FDCA regulating labeling and marketing of food), except

23  where it is a "drug" and then is subject to other regulations under the FDCA.  *See*

24  *id.*; *see also* 21 U.S.C. § 343(s); 25 C.F.R. § 101.36.

25  / / /

26  / / /

27  ───────────────────────────

28  [7]  There is no evidence that Plaintiff has done this.

11

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
9872896-v7

1   The DSHEA enacted specific labeling requirements for dietary supplements.

2   21 U.S.C. § 343(s).  The FDA has also gone on to promulgate detailed regulations

3   concerning the labeling of dietary supplements.  21 C.F.R. § 101.36.

4       2.    **The Court Should Dismiss the First, Second, and Third Claims**

5   Section 43(a)(1)(B) of the Lanham Act makes actionable the placement into

6   interstate commerce of a false or misleading representation about one's product.

7   *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010).

8       As set forth above, the FDCA, including DSHEA, provide a complex and

9   comprehensive regulatory scheme regarding dietary supplements.  They provide to

10  the responsible agency, the FDA, the exclusive oversight, rule-making, and

11  enforcement authority in this area —including on the exact issues in this lawsuit.

12  Thus, where the "FDA has not yet determined how it will interpret and enforce its

13  own regulations" district courts have declined "to usurp the FDA's authority."

14  *Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F.Supp. 918,

15  934 (C.D. Cal. 1996).

16      Indeed, the FDA has "sent letters to Blackstone and Prime regarding Angel

17  Dust and PWO/STIM, respectively."  FAC ¶ 32.[8]  However, those acts do not

18  reflect any final determination by the FDA, let alone even guidance, about which

19  ingredients are legal or not.  *See* 21 C.F.R. § 10.115(b)(3) ("Guidance documents

20  do not include . . . warning letters . . . or other communications directed to

21  individual persons or firms."); *Dietary Supplemental Coalition, Inc. v. Sullivan*,

22  978 F.2d 560, 563 (9th Cir. 1992) (warning letters and specific product seizures

23  did not reflect a final determination by the FDA); *Holistic Candlers and*

24  *Consumers Assoc. v. FDA*, 664 F.3d 940, 944-45 (D.C. Cir. 2012) (warning letters

25  are "only 'informal and advisory'"); *see also Biotics Research Corp. v. Heckler*,

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

26  _____

27  [8] The FDA also recalled a few early lots of Super DMZ 2.0 on March 12, 2014, but took no
    further action.  This further underscores Defendants' point that the FDA's guidance letters do not
28  reflect a final determination on legality.

12

1    710 F.2d 1375, 1378 (9th Cir. 1983) (while a warning letter may contain

2    "conclusions by subordinate officials of the FDA," it does not reflect the agency's

3    final position).  Warning letters give firms an opportunity to undertake "voluntary"

4    changes, but they do not commit the FDA to action.  *Holistic Candlers*, 664 F.3d at

5    944-45.  Rather, the letters prove Defendants' point, which is that the FDA – not

6    the court system – has the primary jurisdiction to regulate dietary supplements and

7    their labels.

8          Plaintiff also points the Court to the Designer Anabolic Steroid Control Act

9    of 2014 which Plaintiff alleges "explicitly banned analogs of substances previously

10   banned, including Super DMZ 2.0."  FAC ¶ 25.  As discussed above though, the

11   ingredients in Defendants' products do not appear on the Designer Anabolic

12   Steroid Control Act.  In cases like this one where there is the absence of a clear

13   directive from the FDA on the legality of the Defendants' products as nutritional

14   supplements, courts have dismissed the complaint.

15         For example, in *Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*, 1997 WL

16   94237, at *6-7 (D. Kan., Feb. 26, 1997) the district court dismissed claims that a

17   product advertised and labeled as a "dietary supplement" was in fact not a "dietary

18   supplement" and thus was "misbranded" and falsely advertised, stating that "such

19   matters are more appropriately addressed to the FDA."  The defendant had

20   affirmatively represented that its product, Calphron, is a "dietary supplement."  *Id.*

21   at *7.  The term dietary supplement, the court noted, is defined in 21 U.S.C.

22   section 321(ff).  *Id.*  The defendant argued that any misbranding claim of the

23   product as a "dietary supplement" could not be brought in the district court because

24   it required the court to apply and interpret the FDCA.  *Id.*  The district court

25   agreed, finding that "**it is not for this court to interpret and apply the statutory**

26   **definition of 'dietary supplement.'**"  *Id.* (emphasis added).

27   / / /

28   / / /

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
9872896-v7

Likewise, here, it is not for this Court to interpret and apply the statutory definition of dietary supplement.  Whether the Allegedly Illegal Products are lawful or unlawful dietary supplements is an issue for the FDA to decide.

Not surprisingly then, whether the products Defendants sell are "legal" or "illegal" is not for the Court to decide because "the allegation that the drugs are being sold *unlawfully* is an issue that would require a more complex finding from the agency." *JHP Pharmaceuticals, LLC v. Hospira, Inc.*, 52 F.Supp. 3d 992, 1003 (C.D. Cal. Oct. 7, 2014) (emphasis in original).  "The question of legality [of Defendant's products] directly implicates the FDA's rulemaking authority.  The determination of whether a drug…can be lawfully marketed under the FDCA involves complex issues of history, public safety, and administrative priorities that Congress has delegated exclusively to the FDA." *Id.* at 1004.  Thus, in *JHP Pharmaceuticals* the court did not permit a Lanham Act claim to proceed where the plaintiff alleged that defendants were falsely representing that their products complied with all applicable laws because it could not proceed "without a clear statement by the FDA.  To do so would be to arrogate the authority of the FDA to decide, at least in the first instance, the legality or illegality of marketing a particular substance." *Id.*  The *JHP Pharmaceuticals* court further noted that, "in order to resolve [Plaintiff's] Lanham Act claim based on a factual allegation that the Defendants are falsely claiming to comply with the law while in fact selling illegal products, the Court must resolve an issue that Congress has placed 'within the jurisdiction of an administrative body having regulatory authority,' under a comprehensive regulatory scheme. *U.S. v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).  And, crucially, this is not a question that can be resolved without expertise. *Id.*  Moreover, Congress's decision to centralize authority to determine the legality of drug sales in the FDA was obviously intended to provide 'uniformity of administration.' *Id.*  **Thus, it seems clear that [Plaintiff's] Lanham Act claim with regard to legality requires a**

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

14

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  **determination that is within the primary jurisdiction of the FDA.**" *Id.* at 1004-

2  1005 (emphasis added); *see also General Dynamics Corp.*, 828 F.2d at 1363 ("The

3  primary jurisdiction doctrine is thus essentially concerned with ensuring that

4  administrative bodies possessed of both expertise and authority delegated by

5  Congress pass on issues within their regulatory authority before consideration by

6  the courts.").

7      The Ninth Circuit has also applied these principles in the medical device

8  arena and precluded a plaintiff from challenging a defendant's marketing of a

9  medical device where the FDA had not yet acted.  Thus, in *PhotoMedex, Inc.*, 601

10  F.3d at 924, the court held that "a private action brought under the Lanham Act

11  may not be pursued when, as here, the claim would require litigation of the alleged

12  underlying FDCA violation in a circumstance where the FDA has not itself

13  concluded that there was such a violation."

14      In *PhotoMedex*, the plaintiff filed federal and state law claims against

15  defendants for false advertising and unfair competition based on alleged

16  misrepresentations in connection with a medical device.  PhotoMedex alleged that

17  Ra Medical falsely claimed that its laser had received FDA approval, when, in fact,

18  it was materially different from the SurgiLight laser product it had licensed to use.

19  *Id*. at 922.  In holding that "[p]ermitting PhotoMedex's Lanham Act claim to

20  proceed in the circumstances of this case would intrude on the exclusive

21  government enforcement authority established under the FDCA" (*id*. at 925) the

22  court reasoned that "[t]he statute assigns to the FDA the responsibility for taking

23  enforcement action against Defendants." *Id*. at 928.  "Testing the truth of

24  PhotoMedex's claim would ... require a court usurp the FDA's prerogative to

25  enforce the FDCA and to decide whether, under the FDCA and its regulations, the

26  Pharos was similar enough to SurgiLight's laser to permit Defendants to rely on its

27  510(k) clearance." *Id*.

28  / / /

1    Similarly, in *Summit Technology* the plaintiff claimed that the defendant's

2   products were falsely advertised as to whether defendant could "lawfully" import

3   its products into the United States.  933 F.Supp. at 932.  The FDA had sent

4   warning letters to the defendant stating that the product could not be sold or

5   imported into the United States.  *Id.* at 926.  Nevertheless, the court explained that

6   "in order for this Court to test the truth of Defendant's apparent claim that it can

7   legally import the Summit lasers, the Court would be required to perform an

8   'original interpretation' of the FDA regulations governing this area."  *Id.* at 934.

9   The court dismissed the Lanham Act claim as to this alleged false advertising

10   because "the proper interpretation and enforcement of the relevant FDA regulation

11   is not an issue properly decided 'as an original matter by a district court in a

12   Lanham Act case.'"  *Id.*

13    Here, determining whether the Allegedly Illegal Products are legal

14   nutritional supplements requires a complicated analysis of the products, the labels,

15   and application of FDA regulations, which is an analysis that Congress has

16   determined the FDA should make in the first instance.  The Court should thus

17   dismiss the Complaint and defer to the FDA's primary jurisdiction.

18   **C.**    **THE FOURTH CLAIM FOR RELIEF SHOULD BE DISMISSED**

19        **BECAUSE PLAINTIFF FAILS TO STATE A CLAIM THAT**

20        **DEFENDANT BLACKSTONE, SINGERMAN, AND BRAUN – NONE**

21        **OF WHOM CONTROL THE SITE – HAVE MADE ANY**

22        **ADVERTISEMENT OR CONSPIRED IN ANY WAY TO FALSELY**

23        **ADVERTISE ON THE SITE**

24    Neither Defendant Blackstone nor Defendant Singerman are alleged to have

25   made *any* false or misleading statement about or relating to the Site, which

26   Plaintiff concedes is owned and controlled by Defendant Hardcore Peptides LLC

27   (not a party to this motion).  *See* FAC ¶ 72 (Singerman is alleged to be a member

28   of the LLC that owns and controls the Site, but there is no allegation that

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

16

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
9872896-v7

1  Singerman made the Site, wrote the content for the Site, directed the marketing of

2  the Site or in any other way was responsible for its content) and ¶ 75 (Blackstone

3  "advertises the Site" but there is no allegation that any such advertising was itself

4  false or misleading).

5       Plaintiff alleges that Defendant Braun "promotes" the Site and mentions

6  "'research'" that the Site is supposedly "selling drugs for." *Id.* ¶ 76.  Such

7  conclusory allegations are, however, too vague to support a Lanham Act cause of

8  action.  *See In Re Sony Grand Wega*, 758 F.Supp.2d at 1093 (plaintiff failed to

9  identify specific advertisements alleged to be false advertising, when and where

10  they were shown, and why there untrue or misleading and therefore failed to meet

11  Rule 8 pleading standard).  Even if they were not too vague, Braun is not alleged to

12  have made the statements as an agent of any defendant.  *See* FAC ¶ 76 ("Braun, a

13  popular body building in his own right") and ¶ 37 (Braun alleged to be

14  Blackstone's President, but not alleging that Braun, as Blackstone's President, was

15  advertising the Site).  Braun himself is not alleged to benefit from any sales on the

16  Site.

17       Even if Braun's statements about the Site, which Blackstone and Braun do

18  not control, were made on behalf of Blackstone (none of which was alleged), the

19  fourth claim must still be dismissed against Blackstone because Blackstone cannot

20  be liable under the Lanham Act for false advertising about *another company's*

21  *product* because the statements are not, as to Blackstone, actionable commercial

22  advertising or promotion.  *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th

23  Cir. 2003) (actionable commercial advertising or promotion under the Lanham Act

24  must be, among other things made "for the purpose of influencing consumers to

25  buy defendant's goods or services").  Significantly, Plaintiff has not alleged that

26  Blackstone receives any monetary gain from the sale of products through the Site.

27       Plaintiff alleges no conspiracy, as discussed in more detail below.

28  / / /

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

17

**D.    THE FIFTH CLAIM FOR RELIEF SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A RICO CLAIM AGAINST BLACKSTONE, SINGERMAN, OR BRAUN**

Plaintiff fails to allege any of the essential elements of a RICO claim under 18 U.S.C. section 1962(c):  "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) *quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

**1.    Plaintiff Fails To Allege A Pattern Of Racketeering Activity**

To plead "a pattern of racketeering activity," Plaintiff must allege at least two predicate acts (18 U.S.C. section 1961(5)) and "show that [these] racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Here, Plaintiff purportedly claims that the predicate acts relate to the introduction of a misbranded drug into interstate commerce.  FAC ¶ 69.  However, violations of 21 U.S.C. § 331(a), 352 or 353(b) are not "racketeering activity" as defined by 18 U.S.C. section 1961 which defines "racketeering activity."  As such the RICO claim fails as a matter of law.

To the extent Plaintiff purports to allege the predicate act of wire fraud under 18 U.S.C. section 1343, Rule 9(b)'s particularity standards apply.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557-58 (9th Cir. 2010); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).  Moreover, wire fraud contains three elements which are not well plead in the FAC "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud."  *Eclectic Props. E. LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  Where companies engage in "transactions that are facially legitimate . . . and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  infer reasonably that such conduct is plausibly party of a fraudulent scheme."

2  *Eclectic Props.*, 751 F.3d at 997-998.  Plaintiff's RICO claim still fails because

3  Plaintiff does not adequately plead wire fraud.

4             2.    **Plaintiff Fails to Adequately Allege A Purported Enterprise**

5         An enterprise must have "at least three structural features:  a purpose,

6  relationships among those associated with the enterprise, and longevity sufficient

7  to permit these associates to pursue the enterprise's purpose."  *Boyle v. United*

8  *States*, 556 U.S. 938, 946 (2009). To allege the existence of a RICO enterprise, a

9  plaintiff must "state the common purpose of the enterprise, which is a purpose that

10  all members of the enterprise must have . . . , and she must also provide facts that

11  could lead to such a conclusion."  *Chagby v. Target Corp.*, No. CV 08-4425-GHK

12  (PJWx), 2008 WL 5686105, at *3 (C.D. Cal. Oct. 27, 2008), *aff'd,* 358 F. App'x

13  805, 808 (9th Cir. 2009) (dismissing plaintiff's complaint for failure to properly

14  allege an enterprise, the requisite predicate acts, or acts that caused injury to

15  plaintiff); *Stitt v. Citibank, N.A.*, Case No. 12-cv-03892-YGR, 2015 WL 75237, at

16  *5 n.5 (N.D. Cal. Jan. 6, 2015) (dismissing RICO claim as to certain defendants

17  where the plaintiff alleged only "limited, conclusory allegation[s]" going to the

18  scheme and common purpose); *O'Toole v. Gencor Nutrients, Inc.*, Case No. 14-

19  03754-R, 2014 U.S. Dist. LEXIS 183343, at *8 (C.D. Cal. July 23, 2014)

20  (dismissing RICO claim where plaintiff failed to "lay out the who, what, where,

21  and when in their complaint").

22         In *Stitt*, for example, the court noted that the original complaint did not

23  contain "specific factual allegations" about the enterprise and "the Court cannot

24  ascertain the structure of the alleged enterprise."  2015 WL 75237 at *2.  Nor could

25  "the Court determine whether the Defendants have engaged in conduct of the

26  enterprise, as opposed to their own affairs."  *Id.*  Plaintiff's FAC fails here for the

27  same reason because Plaintiff fails to plead any specific facts about the alleged

28  enterprise, or explain what acts of the Defendants were allegedly done on behalf of

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

19

the enterprise and what were Defendants' own corporate operations. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (affirming dismissal of RICO claim that failed to "attribute specific conduct to individual defendants"). Plaintiff does not plead any facts to determine the structure of the enterprise and how Defendants Blackstone, Singerman and Braun fit into that structure. Therefore the RICO claim must be dismissed against each of these defendants.

### 3. <u>Plaintiff Fails to Exclude the Obvious Alternate Explanation</u>

Plaintiff "cannot adequately plead a RICO claim simply by alleging facts that would be equally consistent with either Plaintiff's theory or some innocent explanation." *Salas v. Int'l Union of Operating Eng'rs*, No. CV 12-10506 DDP (VBKx), 2015 WL 728365, at *6 (C.D. Cal. Feb. 18, 2015) (dismissing RICO claim and noting that "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*.") (internal quotation omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (holding that where plaintiffs do not allege facts sufficient to "nudge[] their claims across the line from conceivable to plausible, the complaint must be dismissed"). Plaintiff's allegations fail to eliminate the more reasonable and innocent explanation that Defendants were engaged in routine business.

### 4. <u>Plaintiff Fails To Adequately Allege Defendants Conducted Or Participated In An Enterprise</u>

The conduct element of a RICO claim requires that each defendant "have some part in directing [the] affairs" of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "[O]ne is not liable under [section 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183.

Plaintiff fails to allege facts supporting the allegation that Defendants Blackstone, Singerman, or Braun participated in any alleged enterprise. To state a RICO claim, a plaintiff must, with facts, "allege *how* each individual Defendant is

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

9872896-v7

engaged in the enterprise." *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1254 (N.D. Cal. June 23, 2014) (granting motion to dismiss where the plaintiff "only ma[de] a cursory allegation that all Individual Defendants and their numerous related corporations constitute the structure of the enterprise") (internal quotation omitted; emphasis in original).  For example, Plaintiff must allege the structure of the enterprise, its hierarchy, and how decisions are made within the enterprise.  *See id.*

Here, Plaintiff alleges no facts demonstrating Defendants' alleged roles in any alleged enterprise.  The only allegations made as to Defendants' role are vague and conclusory.  *See* FAC ¶¶ 33-37.  Hardcore Ventures LLC is the alleged owner of the Hardcore Peptides website (*id.* ¶ 34) and Blackstone is alleged to "funnel" customers to that website, but neither is alleged to have any specific role in the enterprise.  Likewise, Defendant Singerman is alleged to be a member of Hardcore Ventures LLC but otherwise is not alleged to have done *anything* in the alleged enterprise.  *Id.* ¶ 34.  And although Defendant Braun is alleged to promote the Site, Plaintiff fails to allege that this promotion is part of the alleged enterprise, and, if so, how it fits into the hierarchy and other decision-making of the enterprise.  *Id.* ¶ 36.

The FAC falls far short of meeting the stringent RICO pleading standards.  As such, the fifth claim for relief should be dismissed with prejudice, as the multitude of defects cannot be cured by amendment.

## 5. <u>Plaintiff Lacks Standing Under The RICO Statute</u>

A plaintiff lacks RICO standing if he has not been "injured in his business or property by reason of a violation of section 1962 [of the RICO statute]."  18 U.S.C. § 1964(c).  Failure to plead injury is grounds for dismissal.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985) (no standing under Section 1962 for "those who have not been injured").  Moreover, any injury alleged must also be alleged to have been the proximate result of the RICO activity.  *See Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (for standing, plaintiff must show

21

1   RICO violation was but-for and proximate cause of injury).  Here, Plaintiff fails to

2   plead any injury from the alleged RICO activity, let alone how any such injury was

3   connected to whatever Plaintiff thinks the "enterprise" was.

4   **E.      PLAINTIFF'S SIXTH CLAIM FOR RELIEF FAILS BECAUSE ALL**

5   **          PREDICATE CLAIMS SHOULD BE DISMISSED**

6           Plaintiff pleads that its cause of action based on California Business &

7   Professions Code section 17200 is based on the "illegal conduct" of violating 21

8   U.S.C. section 331(a) and the federal RICO statute.  FAC ¶ 82.  Plaintiff has not

9   alleged that any of the drugs sold on the Site in fact violate section 331(a).  *Id.* ¶

10  74.  And, as discussed above, Plaintiff's remaining claims must be dismissed.

11  Therefore, so too must its section 17200 claim.  *See Pellerin v. Honeywell Intern.,*

12  *Inc.*, 877 F. Supp.2d 983, 992-993 (S.D. Cal. 2012) (dismissing section 17200

13  claim where predicate causes of action were also dismissed and no additional facts

14  alleged to support section 17200 claim).

15  **F.      THE COURT SHOULD DISMISS ALL CLAIMS WITH PREJUDICE**

16  **          BECAUSE PLAINTIFF HAS ALREADY ONCE AMENDED ITS**

17  **          COMPLAINT AND AMENDMENT WOULD BE FUTILE**

18          "A district court does not err in denying leave to amend where the

19  amendment would be futile. . . ."  *Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991).

20  Defendant Blackstone filed a motion to dismiss the Complaint to which Plaintiff

21  responded by filing the FAC adding even more defendants, more allegations, and

22  more claims.  The additional allegations have not saved the complaint from

23  dismissal.  Thus, "further amendment would be futile."  *See Reffin v. Microsoft*

24  *Corp.*, No. C 11-03505 CRB, 2012 WL 1309179, at *5 (N.D. Cal. Apr. 16, 2012);

25  *Michael v. New Century Fin. Servs.*, Case No. 13-cv-03892-BLF, 2015 WL

26  1404939, at *6 (N.D. Cal. Mar. 30, 2015) (finding that "further amendment would

27  be futile" because the plaintiff had already amended) *citing Lopez v. Smith*, 203

28  F.3d 1122, 1125 (9th Cir. 2000) (one amendment may be adequate where plaintiff

**V E N A B L E  L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

22

1   fails to show good cause for additional amendments).

2                 **VI.**    **CONCLUSION**

3        For the foregoing reasons, Defendants respectfully request that the Court

4   dismiss with prejudice Plaintiff's First Amended Complaint for failure to state a

5   claim upon which relief may be granted.

6

7   Dated:  August 3, 2015               **VENABLE LLP**

8

9                        By:  /s/ Daniel S. Silverman

10                            Daniel S. Silverman

11                            Kimberly Culp Cloyd

                              Stephanie A. Montaño

12                    Attorneys for Defendants

                    BLACKSTONE LABS, LLC;

13                    SINGERMAN & BRAUN, LLC

                    d/b/a Prime Nutrition;

14                    AARON SINGERMAN; and

                    PJ BRAUN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900